**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JABARI STAFFORD,

                Plaintiff,

v.

THE GEORGE WASHINGTON
UNIVERSITY, et al.,

                Defendants.

Case No. 1:18-cv-02789-CRC

**ORAL HEARING REQUESTED**

**MEMORANDUM IN SUPPORT OF
DEFENDANTS GEORGE WASHINGTON UNIVERSITY AND NICOLE EARLY'S
<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .......................................................................................... 1

BACKGROUND ........................................................................................... 1

LEGAL STANDARD...................................................................................... 5

ARGUMENT ............................................................................................... 6

   I.   Plaintiff's "Shotgun" Pleading Warrants Dismissal. ...................................... 6

   II.   Plaintiff's DCHRA And Title VI Discrimination Claims Fail As A Matter Of Law........................................................................................................ 7

      A.   The Complaint Fails To State A Claim Under The DCHRA (Count I)................. 8

      B.   The Complaint Fails To State A Claim Under Title VI (Count II)...................... 10

   III.   Plaintiff's Contract-Based Claims Fail As A Matter of Law......................................... 13

      A.   The Complaint Fails To State A Claim Under 42 U.S.C. § 1981 (Count III). ................................................................................................... 13

      B.   Plaintiff Fails To State A Claim For Breach Of Contract (Count IV). ................. 17

   IV.   Plaintiff's Negligence Claims Fail As A Matter Of Law.............................................. 21

      A.   The Complaint Fails To State A Claim For Negligent Infliction Of Emotional Distress (Count V). ............................................................... 22

      B.   The Complaint Fails To State A Claim For Negligent Retention Or Negligent Supervision (Count VI). ...................................................... 27

   V.   Plaintiff's Demand For Punitive Damages Should Be Dismissed. ............................. 30

CONCLUSION.............................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelfattah v. U.S. Dep't of Homeland Sec.*,
  787 F.3d 524 (D.C. Cir. 2015)......................................................................................5

*Achoe v. Clayton*,
  2018 WL 4374926 (D.D.C. Sept. 13, 2018) ...............................................................2

*\*Alden v. Georgetown Univ.*,
  734 A.2d 1103 (D.C. 1999) ...............................................................................15, 19

*Alexander v. Sandoval*,
  532 U.S. 275 (2001).....................................................................................................10

*Allworth v. Howard Univ.*,
  890 A.2d 194 (D.C. 2006) ...........................................................................................20

*Alston v. District of Columbia*,
  561 F. Supp. 2d 29 (D.D.C. 2008) ...............................................................................8

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ...................................................................................5

*Amin v. Nyack Sch. of Adult & Distance Educ.*,
  710 F. Supp. 2d 80 (D.D.C. 2010) .............................................................................21

*Arthur Young & Co. v. Sutherland*,
  631 A.2d 354 (D.C. 1993) ...........................................................................................30

*Asare v. LM-DC Hotel, LLC*,
  62 F. Supp. 3d 30 (D.D.C. 2014) ...............................................................................26

*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................5, 10, 16

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) .....................................................................................7

*Barnes v. Gorman*,
  536 U.S. 181 (2002)......................................................................................................31

*Basch v. George Wash. Univ.*,
  370 A.2d 1364 (D.C. 1977) .........................................................................................14

*BEG Invs., LLC v. Alberti,*
  85 F. Supp. 3d 13 (D.D.C. 2015) ............................................................. 11

*\*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................. 5, 7, 12

*Bonner v. S-Fer Int'l, Inc.,*
  207 F. Supp. 3d 19 (D.D.C. 2016) ..................................................... 23, 26

*Bradley v. Nat'l Collegiate Athletic Ass'n,*
  249 F. Supp. 3d 149 (D.D.C. 2017) ................................................... 26, 32

*Bradshaw v. Rawlings,*
  612 F.2d 135 (3d Cir. 1979) .............................................................. 25

*Brady v. U.S. Capitol Police,*
  200 F. Supp. 3d 208 (D.D.C. 2016) ....................................................... 16

*Brown v. Children's Nat'l Med. Ctr.,*
  773 F. Supp. 2d 125 (D.D.C. 2011) ................................................... 13, 16

*Brown v. Coates,*
  253 F.2d 36 (D.C. Cir. 1958) ............................................................ 31

*Browning v. Clinton,*
  292 F.3d 235 (D.C. Cir. 2002) ............................................................. 5

*Carter-Frost v. District of Columbia,*
  305 F. Supp. 3d 60 (D.D.C. 2018) ........................................................ 8

*Cavalier v. Catholic Univ. of Am.,*
  306 F. Supp. 3d 9 (D.D.C. 2018) ........................................................ 25

*Chenari v. George Wash. Univ.,*
  847 F.3d 740 (D.C. Cir. 2017) ........................................................... 15

*\*Choharis v. State Farm Fire & Cas. Co.,*
  961 A.2d 1080 (D.C. 2008) ......................................................... 21, 31, 32

*Chriswell v. Vill. of Oak Lawn,*
  No. 11-C-00547, 2013 WL 5903417 (N.D. Ill. Nov. 4, 2013) ............................... 6

*Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.,*
  297 F. Supp. 3d 106 (D.D.C. 2018) ...................................................... 21

*Demby v. Preston Trucking Co.,*
  961 F. Supp. 873 (D. Md. 1997) ......................................................... 28

*Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law,*
  570 F. Supp. 2d 1 (D.D.C. 2008) ........................................................8, 17

*District of Columbia v. Evans,*
  644 A.2d 1008 (D.C. 1994) ................................................................24

*Easaw v. Newport,*
  253 F. Supp. 3d 22 (D.D.C. 2017) ..................................................10, 16

*Ey v. Office of Chief Admin. Officer of U.S. House of Representatives,*
  967 F. Supp. 2d 337 (D.D.C. 2013) .....................................................16

*Ford v. Suntrust Mortg.,*
  282 F. Supp. 3d 227 (D.D.C. 2017) ......................................................18

*Giles v. Shell Oil Corp.,*
  487 A.2d 610 (D.C. 1985) ..................................................................27

*Griffin v. Acacia Life Ins. Co.,*
  925 A.2d 564 (D.C. 2007) ..............................................................27, 28

*\*Hajjar-Nejad v. George Washington Univ.,*
  37 F. Supp. 3d 90 (D.D.C. 2014) .................................................. *passim*

*Hawkins v. Wash. Metro. Area Transit Auth.,*
  311 F. Supp. 3d 94 (D.D.C. 2018) .......................................................23

*\*Hedgepeth v. Whitman Walker Clinic,*
  22 A.3d 789 (D.C. 2011) (en banc) ...........................................22, 23, 24, 25

*Hollis v. Rosa Mexicano DC, LLC,*
  582 F. Supp. 2d 22 (D.D.C. 2008) .......................................................24

*Hudson v. Am. Fed'n of Gov't Emps.,*
  308 F. Supp. 3d 388 (D.D.C. 2018) .......................................................6

*\*Ihebereme v. Capital One, N.A.,*
  730 F. Supp. 2d 40 (D.D.C. 2010) ..................................................9, 17, 18

*Jackson v. Corr. Corp. of Am.,*
  564 F. Supp. 2d 22 (D.D.C. 2008) .......................................................32

*Jacobsen v. Oliver,*
  201 F. Supp. 2d 93 (D.D.C. 2002) .......................................................20

*Jane W. v. President & Dirs. of Georgetown Coll.,*
  863 A.2d 821 (D.C. 2004) ..................................................................24

iv

*Jiggetts v. District of Columbia,*
  319 F.R.D. 408 (D.D.C. 2017)..........................................................................6, 7

*Jonathan Woodner Co. v. Breeden,*
  665 A.2d 929 (D.C. 1995), *opinion amended on denial of reh'g*, 681 A.2d
  1097 (D.C. 1996) ...............................................................................................32

*Jones v. R.R. Donnelley & Sons Co.,*
  541 U.S. 369 (2004)...........................................................................................13

*Ju v. Carter,*
  No. 14-cv-391, 2015 WL 5168251 (D.D.C. Aug. 31, 2015) ..............................18

*Kimmel v. Gallaudet Univ.,*
  639 F. Supp. 2d 34 (D.D.C. 2009) .....................................................................10

*Kohler v. HP Enter. Servs., LLC,*
  212 F. Supp. 3d 1 (D.D.C. 2016) .......................................................................27

*Kolstad v. Am. Dental Ass'n,*
  527 U.S. 526 (1999)...........................................................................................31

*Lesesne v. District of Columbia,*
  146 F. Supp. 3d 190 (D.D.C. 2015)....................................................................22

*Logan v. LaSalle Bank Nat'l Ass'n,*
  80 A.3d 1014 (D.C. 2013) ..................................................................................18

*Manago v. District of Columbia,*
  934 A.2d 925 (D.C. 2007) ............................................................................14, 18

*Marshall v. Honeywell Tech. Sols., Inc.,*
  536 F. Supp. 2d 59 (D.D.C. 2008) .....................................................................15

*McMillan v. Nat'l R.R. Passenger Corp.,*
  648 A.2d 428 (D.C. 1994) ..................................................................................24

*Mitchell v. DCX, Inc.,*
  274 F. Supp. 2d 33 (D.D.C. 2003) .....................................................................13

*Munoz v. Bd. of Trs. of Univ. of D.C.,*
  590 F. Supp. 2d 21 (D.D.C. 2008) .....................................................................22

*Mwabira-Simera v. Howard Univ.,*
  692 F. Supp. 2d 65 (D.D.C. 2010) ................................................................10, 13

*Paul v. Howard Univ.,*
  754 A.2d 297 (D.C. 2000) ..................................................................................20

*Phelan v. City of Mount Rainier*,
    805 A.2d 930 (D.C. 2002) ...................................................................................30

*Poola v. Howard Univ.*,
    147 A.3d 267 (D.C. 2016) .............................................................................9, 14

*Powell v. Davis*,
    No. 18-cv-0297, 2018 WL 5621491 (D.D.C. Oct. 30, 2018) ....................................5

*Primas v. District of Columbia*,
    718 F. Supp. 2d 59 (D.D.C. 2010) ..................................................................5, 30

*\*Raihan v. George Wash. Univ.*,
    324 F. Supp. 3d 102 (D.D.C. 2018) ...............................................................27, 30

*Rendall-Speranza v. Nassim*,
    107 F.3d 913 (D.C. Cir. 1997) ...........................................................................22

*Robinson v. Sarisky*,
    535 A.2d 901 (D.C. 1988) .................................................................................32

*Saha v. George Wash. Univ.*,
    577 F. Supp. 2d 439 (D.D.C. 2008) ....................................................................18

*Sere v. Grp. Hospitalization, Inc.*,
    443 A.2d 33 (D.C. 1982) ..............................................................................31, 32

*Sheller-Paire v. Gray*,
    888 F. Supp. 2d 34 (D.D.C. 2012) ..............................................................9, 12, 15

*Shukh v. Seagate Tech., LLC*,
    873 F. Supp. 2d 1087 (D. Minn. 2012) ...............................................................31

*Sibley v. St. Albans Sch.*,
    134 A.3d 789 (D.C. 2016) .................................................................................25

*Smith v. Henderson*,
    54 F. Supp. 3d 58 (D.D.C. 2014) .......................................................................12

*Spaeth v. Georgetown Univ.*,
    839 F. Supp. 2d 57 (D.D.C. 2012) .......................................................................5

*Sparrow v. United Air Lines, Inc.*,
    216 F.3d 1111 (D.C. Cir. 2000) ...........................................................................5

*Taghioskoui v. George Wash. Univ.*,
    No. 2012 CA 007207B (D.C. Super. Ct. Feb. 5, 2015) ...........................................26

*Thomas v. Wash. Metro. Area Transit Auth.*,
   305 F. Supp. 3d 77 (D.D.C. 2018) ................................................................5

*Thorp v. District of Columbia*,
   319 F. Supp. 3d 1 (D.D.C. 2018) ...............................................................27

*Tridico v. District of Columbia*,
   130 F. Supp. 3d 17 (D.D.C. 2015) .............................................................27

*Tsintolas Realty Co. v. Mendez*,
   984 A.2d 181 (D.C. 2009) ..........................................................................17

*Uzoukwu v. Metro. Wash. Council of Gov'ts*,
   983 F. Supp. 2d 67 (D.D.C. 2013) .............................................................27

*Wanko v. Catholic Univ. of Am.*,
   No 08-cv-2115-RJL, 2009 WL 3052477 (D.D.C. Sept. 22, 2009) ....................13, 18

*Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*,
   Nos. 04-cv-838, 04-cv-687, 2006 WL 1147933 (D.D.C. Apr. 28, 2006) ...............20

*Watson v. D.C. Water & Sewer Auth.*,
   No. 16-cv-2033, 2018 WL 6000201 (D.D.C. Nov. 15, 2018) .............................8

*Williams v. Baker*,
   572 A.2d 1062 (D.C. 1990) (en banc) ........................................................22

*Woytowicz v. George Wash. Univ.*,
   327 F. Supp. 3d 105 (D.D.C. 2018) ...........................................................30

**Statutes**

28 U.S.C. § 1332 ...............................................................................................30

28 U.S.C. § 1367 ...............................................................................................30

28 U.S.C. § 1658 ...............................................................................................13

42 U.S.C. § 1981 ...............................................................................................13

42 U.S.C. § 1981a(b)(1) .....................................................................................31

42 U.S.C. § 2000d .............................................................................................10

D.C. Code § 2-1402.41 ........................................................................................8

D.C. Code § 2-1402.61 ......................................................................................10

D.C. Code § 2-1403.16 ........................................................................................8

D.C. Code § 12-301 ..............................................................................................17, 22, 27

D.C. Code § 1401.02 ...........................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................6, 7

Fed. R. Civ. P. 12 ...............................................................................................................5

*Men's Tennis Schedule*, GW Men's Tennis,
     https://gwsports.com/schedule.aspx?schedule=181 (last visited Jan. 21, 2019) ....................11

Restatement (Second) of Torts § 313 (1965) ..............................................................23

## INTRODUCTION

Plaintiff Jabari Stafford ("Plaintiff") is a former student and walk-on member of the men's tennis team at the George Washington University (the "University") whose poor grades led to his academic suspension in January 2018.  Over ten months later, Plaintiff filed this action against the University and four current or former athletics department employees—Patrick Nero, Nicole Early, Gregory A. Munoz, and David Macpherson (collectively, the "Individual Defendants")—alleging racial discrimination, contract-based claims, negligent infliction of emotional distress, and negligent retention and supervision of some of the Individual Defendants by the University.  His scattershot Complaint includes a variety of allegations about his fellow student-athletes ranging from inappropriate racial remarks to horseplay, none of which (if true) the University condones.  But even if true, the Complaint does not provide facts to support its conclusory statements that the University or the Individual Defendants discriminated against him on the basis of his race.  To the contrary, at the time of his academic suspension, in an internal appeal subject to judicial notice, Plaintiff took responsibility for his difficulties with handling college academics and the pressures of being a student-athlete:  "I poorly . . . handled being a student-athlete."  He did not mention his race (or alleged discrimination) at all.  And because Plaintiff now fails to allege facts sufficient to support any of his causes of action, his Complaint should be dismissed with prejudice.

## BACKGROUND

The University and Early set forth here the facts alleged in Plaintiff's Complaint.  To be clear, the University and Early do not concede these facts, but accept them as true only for purposes of this Motion to Dismiss because they must under the applicable legal standard.  The University takes claims of racism among its student body very seriously, and has addressed and continues to address all matters of which it was and is aware with the utmost care and attention.  In this instance, the University and Early categorically deny any race discrimination:  they treated Plaintiff fairly

and do not condone any discriminatory or inappropriate behavior, which is completely inconsistent with the University and Early's values and principles.

Plaintiff, an African American, matriculated at the University as a freshman in September 2014, and joined the University men's tennis team as a walk-on "two weeks into the Fall [tennis] season." Compl. ¶ 18. Plaintiff had pursued tennis from a very young age at the instigation of his father, who "made significant sacrifices, financial and otherwise" to support a potential tennis career. *Id*. ¶ 14. Almost immediately after arriving at the University, however, Plaintiff stumbled both on and off the tennis court. Plaintiff states that his GPA in his freshman spring semester was "well below a 2.0." *Id.* ¶ 54. His transcript, which is fairly incorporated by his reference to his GPA, *see id.* ¶¶ 54, 90, confirms that Plaintiff was having material difficulties with his academics starting in his first semester at the University, *see* Ex. A at 5–6 (2.73 GPA in fall 2014 semester). *See, e.g.*, *Achoe v. Clayton*, 2018 WL 4374926, at *3 (D.D.C. Sept. 13, 2018) (Cooper, J.) (considering plaintiff's "informal and formal OEEO complaints, which are incorporated in his Complaint").

In addition to struggling academically, Plaintiff clashed with his teammates and was "social[ly] withdraw[n] from the team." Compl. ¶ 28. His freshman year, Plaintiff was one of only three Americans on the roster. *Id.* ¶ 18. His foreign teammates allegedly left Plaintiff off of emails or messages, *id.* ¶ 22; *see also id.* ¶¶ 79–80, and at times allegedly made culturally insensitive and racially charged statements online and in person, typically when coaches were not around. This clash of cultures, and the tension resulting from the history of foreign players outperforming the Americans, was evident from the very beginning of Plaintiff's tenure. *See id.* ¶ 18. Moreover, Plaintiff took umbrage at his role as a supporting, rather than leading, player. *See, e.g.*, *id.* ¶¶ 47, 51, 69, 71, 83. Plaintiff frequently exhibited poor sportsmanship and had anger

management problems that further undermined his relationship with his teammates and coaches. *See, e.g., id.* ¶¶ 25, 31, 38, 40, 60, 63, 71, 82.  Plaintiff's behavioral and other issues led to him being temporarily suspended from the team in January 2015, in his freshman year.  *See id.* ¶¶ 25–32.  Gregory Munoz (then the head tennis coach) and Early (the assistant athletic director) took the time to sit down with Plaintiff and his father to discuss the suspension.  *Id.* ¶ 28.[1]

Plaintiff was consistently frustrated with his lack of playing time.  For example, at a tournament in March 2016, Plaintiff was allegedly told by an assistant coach that he would be in the lineup, but Torrie Browning, an African-American woman who was another assistant coach and took over as interim head coach after Munoz departed the University mid-spring season 2016, ultimately did not play him.  *See Compl.* ¶¶ 65, 67–69.  After the tournament, Plaintiff reached out to Early, and she and Browning met with him and explained that his limited playing time was based on relative skill, his lack of discipline, and his failure to be a team player.  *Id.* ¶ 71.

By the fall of 2016, there was confusion over whether Plaintiff was still on the tennis team. David Macpherson became head coach, and, under the impression that Plaintiff was not on his team roster (in truth, because he had stopped showing up), told Plaintiff as much when he contacted Macpherson about practice.  *See Compl.* ¶ 76.  Plaintiff and his father met with two University administrators—the Vice Provost for Diversity and Inclusion and the Senior Associate Director of Athletics—who allegedly observed that Plaintiff would have needed to sign a waiver to be removed from the team.  *Id.* ¶ 77.  After the meeting, Plaintiff was given the opportunity to perform a skills assessment, following which Macpherson allowed him back on the team.  *See id.* ¶¶ 78,

---

[1]  Plaintiff's father frequently interacted with the coaching staff, although Macpherson, while serving as the head tennis coach, supposedly "never had any problems with Plaintiff's father overstepping his boundaries."  Compl. ¶ 83; *see also id.* ¶¶ 16–17, 26, 28, 32–33, 45–46, 72, 88.

80.  And despite continuing interpersonal conflicts between Plaintiff and his teammates, *see id.* ¶¶ 79, 81, Macpherson made every effort to ensure Plaintiff had a fresh start, *id.* ¶ 80. Nevertheless, Plaintiff acted out again in early 2017.  *See id.* ¶ 82.  After losing a practice match to a teammate, Plaintiff "yelled at [assistant coach] Aita" for not stopping the other player's "bickering and taunting" during the set.  *Id.*; *see also id.* ¶¶ 63–64.  As a result of Plaintiff's outburst, Macpherson suspended Plaintiff from the team for one practice day.  *Id.* ¶ 82.[2]

Plaintiff ultimately could not meet the University's academic expectations and was suspended from the University in January 2018, just before his senior spring semester, for failing to maintain the required minimum GPA.  Compl. ¶ 90.[3]  In his appeal of his academic suspension from the University, Plaintiff took full responsibility for his weak academic performance, explaining that he had failed to take advantage of the academic assistance that had been offered to him and that he had been adversely affected by "marital problems between [his] parents."  *See* Ex. A at 3–4.  He acknowledged that he "became too focused on tennis" and had handled being a student-athlete "poorly."  *Id.* at 3.  He did not allege any form of racial discrimination.  *Id.* at 3–4.

On November 26, 2018, almost a year after his academic suspension, Plaintiff filed this lawsuit against the University and the Individual Defendants, alleging vague and confusing discrimination, contract, and negligence claims.  Compl. ¶¶ 95–134.  Plaintiff timely served the

---

[2]  Patrick Nero, who was the athletic director at all relevant times, is mentioned just once in the factual allegations—and even then only because Plaintiff's father supposedly wanted to meet with him, but Early and Munoz allegedly demurred.  Compl. ¶ 32.

[3]  The Complaint repeatedly fails to provide specific dates for events and does not state a date for Plaintiff's academic suspension.  However, his suspension appeal paperwork, which is fairly incorporated by paragraph 90 of the Complaint, shows that he was suspended due to his poor grades on January 5, 2018, and his appeal of the suspension was denied on January 12, 2018.  *See* Ex. A at 1–8.

University and Early, who now file this Motion to Dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).[4]

## LEGAL STANDARD

This Court has summarized the standard for a motion to dismiss under Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff[ ] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion to dismiss, a court must "treat a complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and quotation omitted); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  A court need not, however, accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor must a court accept a plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

*Powell v. Davis*, No. 18-cv-0297, 2018 WL 5621491, at *2 (D.D.C. Oct. 30, 2018) (Cooper, J.).

Although a *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers," it still "must plead factual matter that permits the court to infer more than the mere possibility of misconduct."  *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015) (quotation marks omitted).  Further, a court may dismiss a prayer for punitive damages under Rule 12(b)(6).  *See Thomas v. Wash. Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 88–89 (D.D.C. 2018) (dismissing "claims for punitive damages"); *Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 65–66 (D.D.C. 2012) (similar and rejecting argument that scope of relief cannot be addressed on a motion to dismiss); *Primas v. District of Columbia*, 718 F. Supp. 2d 59, 61–62

---

[4]  The University and Early are not aware of any attempted service of the summons and complaint on any other individual defendant at this time.

(D.D.C. 2010) (dismissing prayer for punitive damages because the complaint "fails to allege facts showing that [defendant] acted with the" requisite intent).

## ARGUMENT

### I. Plaintiff's "Shotgun" Pleading Warrants Dismissal.

Plaintiff's "shotgun" style of pleading—"where each count incorporate[s] by reference all preceding paragraphs and counts of the complaint"—is impermissible and by itself warrants dismissal of the whole Complaint.  *Chriswell v. Vill. of Oak Lawn*, No. 11-C-00547, 2013 WL 5903417, at *5 (N.D. Ill. Nov. 4, 2013) (quotation marks omitted).  Scattershot pleading fails to provide "sufficient clarity to give fair notice of the claims raised and their basis."  *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 414 (D.D.C. 2017), *aff'd sub nom. Cooper v. District of Columbia*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017).  It is thus "clear beyond cavil that 'a shotgun pleading'—one in which it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief—does not comply with the standards of Rule 8."  *Jiggetts*, 319 F.R.D. at 417 (quotation marks and alterations omitted); *see also Hudson v. Am. Fed'n of Gov't Emps.*, 308 F. Supp. 3d 388, 395–6 (D.D.C. 2018) (granting motion to dismiss claim brought under § 1981 where the Complaint did not specifically state what constituted a violation but only realleged and incorporated by reference the previous paragraphs).

The Complaint fails to provide fair notice of Plaintiff's claims and their bases.  It asserts factual allegations in a section titled "Facts Relevant to All Claims," *see* Compl. ¶¶ 14–92, and then lists six counts where all of the preceding paragraphs and counts are incorporated by reference, *see id.* ¶¶ 95–134.  Counts I, II, and III simply recite the relevant statute and allege that the "aforesaid acts" violated the statute.  *See id.* ¶ 100 (Count I); *id.* ¶ 104 (Count II); *id.* ¶ 108 (Count III).  Similarly, Count IV merely alleges that a contract existed, and that the University breached it "by its aforesaid conduct."  *Id.* ¶¶ 110–14.  Counts V and VI are barely better; neither

6

clearly connects the claim of negligence to Defendants' conduct and to an injury to Plaintiff.  *See id.* ¶¶ 115–24 (Count V); *id.* ¶¶ 125–34 (Count VI).  All but Counts IV and VI, moreover, purport to raise claims against all Defendants without alleging which acts were committed by which Defendant.  That pleading is insufficient.  *See Twombly*, 550 U.S. at 555 (holding that Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (affirming dismissal where, "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," Plaintiff failed to give each defendant notice of the specific claims against him).

The basis for each claim is further obscured by the inclusion of patently irrelevant and unnecessary facts.  For example, a teammate's mother would allegedly say mean things about him, Compl. ¶ 85; an assistant coach got in an accident while driving the team van, but Plaintiff was not in the van at the time, *id.* ¶ 21; Munoz attempted to keep "sole control" of his players' tennis "development" without interference from players' parents, *id.* ¶ 17; and Munoz allegedly encouraged Plaintiff and another teammate to "taunt" opposing players, *id.* ¶ 47.  The Complaint is thus insufficient on its face and should be dismissed in its entirety.  *Jiggetts*, 319 F.R.D. at 415 (dismissing complaint where "Plaintiff include[d] a host of facts that relate[d] to their employment but d[id] not clearly pertain to the legal claims they allege[d], such as descriptions of allegedly discriminatory conduct to which *other* individuals were subjected," and where "th[o]se [aforesaid] descriptions [were] either wholly irrelevant to the matter at hand or [were] inexplicably (and possibly erroneously) being recited as grounds for some of Plaintiffs' claims").

## II.    Plaintiff's DCHRA And Title VI Discrimination Claims Fail As A Matter Of Law.

A close examination of each count confirms that none states a claim under which relief can be granted.

### A.   The Complaint Fails To State A Claim Under The DCHRA (Count I).

The D.C. Human Rights Act ("DCHRA") prohibits discrimination on the basis of race by "an educational institution" with respect to "the use of, or access to, any of its facilities, services, programs, or benefits of any program or activity to any person otherwise qualified."  D.C. Code § 2-1402.41(a).[5]  "Any person claiming to be aggrieved by an unlawful discriminatory practice" may sue the educational institution or its culpable agents.  *Id.* § 2-1403.16(a) (cause of action); *id.* § 1401.02(8) (defining "educational institution" to include "an agent of an educational institution"); *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 44–45 (D.D.C. 2008) (allowing suit against D.C. Public Schools officials in their personal capacities).  To establish a viable claim under the DCHRA, Plaintiff must show he "was subject to an adverse action motivated by [race] discrimination."  *See Carter-Frost v. District of Columbia*, 305 F. Supp. 3d 60, 67 (D.D.C. 2018).

DCHRA claims are subject to a one-year statute of limitations.  D.C. Code § 2-1403.16(a).  "This one-year period begins to run at the time the plaintiff is made aware of the allegedly discriminatory act."  *Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 6 (D.D.C. 2008); *see also Watson v. D.C. Water & Sewer Auth.*, No. 16-cv-2033, 2018 WL 6000201, at *4 (D.D.C. Nov. 15, 2018).  Therefore, Plaintiff's DCHRA claim must rely on facts that occurred on or after November 26, 2017, which corresponds to no more than paragraph 87 (which begins "in Fall of 2017") through paragraph 90 (which admits that the University "suspended Plaintiff for failure to maintain the required GPA") in the Complaint, although it is unclear from

---

[5]   Plaintiff cites to the wrong section of the code in the Complaint.  Compl.  ¶ 97 (citing to Section 2-1402.21).

the face of the Complaint whether everything described in these paragraphs occurred on or after November 26, 2017.[6]

Plaintiff has utterly failed to identify how he was discriminated against by the University and the Individual Defendants. *See* Compl. ¶ 98 ("Plaintiff is African American and a member of a protected class."), ¶ 100 ("Defendant, by committing the aforesaid acts, violated [the DCHRA] in multiple respects."). That is plainly insufficient. *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 54 (D.D.C. 2010) ("Simply including the conclusory clause 'by virtue of his race and ethnicity' after recounting defendant's behavior, without any factual allegations that address the relevance of race and ethnicity, does not state a claim for discrimination. Plaintiff alleges his membership in a protected class by stating his race and ethnicity, but that alone does not meet the requirement of a 'detailed factual allegation,' under *Twombly,* to adequately allege that race or ethnicity motivated another's actions." (citation omitted)).

Even if the Court parses the Complaint for any conceivable adverse action taken by Defendants within the limitations period, only Plaintiff's academic suspension is available. But Plaintiff has not alleged that his suspension from the University was motivated by race discrimination. That by itself warrants dismissal. *Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 41 (D.D.C. 2012) (dismissing discrimination claims because "the plaintiff never alleges that the adverse . . . actions . . . were taken *because* of his race"). In fact, Plaintiff concedes that he was suspended for failing to meet the University's minimum GPA requirements. Compl. ¶ 90. "As between that obvious alternative explanation for" Plaintiff's suspension and the racial discrimination that even an extremely generous reading of the Complaint cannot "infer,

---

[6] It is Plaintiff's burden to "identify the date(s)" when the allegedly discriminatory actions occurred. *Poola v. Howard Univ.*, 147 A.3d 267, 275 (D.C. 2016) (applying *Twombly* and *Iqbal*).

discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682 (quotation marks omitted); *see also Easaw v. Newport*, 253 F. Supp. 3d 22, 32 (D.D.C. 2017) (explaining that Plaintiff's inclusion of allegations "that suggest race was not a factor in the [adverse] decision . . . significantly weakens a complaint that is already barren of factual allegations that could give rise to an inference" of discrimination).

To the extent Plaintiff's recitation of the DCHRA's retaliation provision might be very generously read to adequately plead a retaliation claim (it should not), it fails for a similar reason. *See* Compl. ¶ 99 (reciting D.C. Code § 2-1402.61). "For [a] DCHRA retaliation claim, . . . [Plaintiff] must show that (1) [he] engaged in a protected activity; (2) [he] suffered an adverse action; and (3) there is a causal connection between the two." *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 44 (D.D.C. 2009). Plaintiff concedes that he was suspended for academic reasons, not for engaging in a protected activity. Compl. ¶ 90.

Finally, the DCHRA claim should be dismissed with respect to Early because she is not mentioned at all in the factual allegations contained in paragraphs 87 through 90. The same is true for the other Individual Defendants. Indeed, Munoz was not even employed by the University during the limitations period.

**B. The Complaint Fails To State A Claim Under Title VI (Count II).**

Plaintiff's discrimination claim under Title VI of the Civil Rights Act of 1964 fares no better. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A private right of action exists under Title VI only for "intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001). The statute of limitations for a Title VI claim is three years. *See Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 71 (D.D.C. 2010)

(explaining that under District of Columbia law, a violation of a federal anti-discrimination law is subject to the three-year limitation period applicable to a claim of personal injury).  Therefore, Plaintiff's Title VI claim must rely on facts that occurred on or after November 26, 2015 (late in the fall semester of Plaintiff's sophomore year), or roughly after paragraph 62 in the Complaint.[7]

Plaintiff's claim against the University fails because, although Plaintiff alleges that the University "is a program or activity that receives Federal financial assistance," Compl. ¶ 103, he has completely failed to identify how the University "engaged in intentional discrimination" against him based on race, referring to only "the aforesaid acts," *id.* ¶ 104.  But even parsing the Complaint to identify any intentional actions that could conceivably be imputed to the University fails to unearth "any factual allegations supporting its conclusory allegations of discriminatory intent." *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 33 (D.D.C. 2015).  "[C]areful review of Plaintiff's . . . complaint shows that it lacks adequate factual allegations to make its conclusory assertions of discrimination plausible rather than merely possible." *Id.*

As explained above, Plaintiff cannot base a discrimination claim against the University on his academic suspension in January 2018.  That leaves Plaintiff's alleged removal from the tennis team sometime in fall 2016, which Plaintiff alleges was reversed in any event, and his alleged suspension by Macpherson for one practice day in what appears to be late 2016 or early 2017, as the only two conceivable adverse actions Plaintiff suffered.  Both fall well short of the standard for "adverse action."  *See, e.g.*, *Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 128

---

[7]  In paragraphs 59–62, Plaintiff relates an alleged event from "the first individual tournament of the Fall 2015 season."  The entirety of that season took place before November 26, 2015, according to the publicly available team schedule.  *See 2015 Men's Tennis Schedule*, GW Men's Tennis, https://gwsports.com/schedule.aspx?schedule=181 (last visited Jan. 21, 2019). Regardless, there is no allegation in those paragraphs of any adverse action or statement or incident related to race.

(D.D.C. 2014) (applying the D.C. Circuit's standard for adverse employment action to an education claim under Title VI and § 1981: "[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm" (quotation marks and citation omitted)).  Plaintiff, who was not a scholarship athlete and had no right or guarantee to even remain on the tennis team, makes no claim that he suffered "objectively tangible harm . . . other than perhaps humiliation, anger and embarrassment" as a result of the alleged removal and one-day suspension from the team, which are "not the sort of harms upon which Plaintiff can claim an adverse action." *Id.* at 129 (quotation marks and citation omitted).[8]

Regardless, "[p]roving intentional discrimination is notoriously difficult, absent direct evidence of a discriminatory rationale." *Smith v. Henderson*, 54 F. Supp. 3d 58, 68–69 (D.D.C. 2014).  Plaintiff has not even alleged that either his removal from the team or his one-day suspension were motivated by a discriminatory rationale.  *See* Compl. ¶¶ 75–78, 82.  As such, he has failed to allege facts sufficient to "nudge[ ]" either potential claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Sheller-Paire*, 888 F. Supp. 2d at 41.

---

[8]  The University's Student Athlete Handbook (which is fairly incorporated by Plaintiff's allegations about "GWU's internal policies and procedures," Compl. ¶ 34; *see also id.* ¶ 77) plainly states that "[s]tudent-athlete participation in any aspect of [its] intercollegiate athletics program or its support services is considered a privilege rather than a right," Ex. B at 8 (2014–2015 ed.).  The handbook is reproduced nearly every academic year.  *See* Exs. B, C, D, & E.  However, there was no relevant substantive change during Plaintiff's tenure at the University.  *See, e.g.*, Ex. E (2017–2018 ed.).  Plaintiff signed an information sheet each year acknowledging that "[p]articipation as a varsity student-athlete is a privilege and not a right" and that violation of any of the University's expectations for student-athletes "may result in disciplinary action."  Ex. F.

Finally, Plaintiff's Title VI claim against Early (and, indeed his Title VI claims against all the Individual Defendants) fail as a matter of law because "[t]he text of Title VI . . . precludes liability against . . . individuals." *Mwabira-Simera*, 692 F. Supp. 2d at 70 (quotation marks omitted); *see also Wanko v. Catholic Univ. of Am.*, No 08-cv-2115-RJL, 2009 WL 3052477, at *2 (D.D.C. Sept. 22, 2009) (dismissing Title VI claims against individual defendants).

## III.    Plaintiff's Contract-Based Claims Fail As A Matter of Law.

The Complaint raises two claims based on the existence of a contract with the University. First, Plaintiff alleges discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); Compl. ¶¶ 105–08. Second, Plaintiff alleges the University breached the alleged contract. For similar reasons, both claims fail as a matter of law. Compl. ¶¶ 109–14.

### A.    The Complaint Fails To State A Claim Under 42 U.S.C. § 1981 (Count III).

To state a claim for violating § 1981, Plaintiff must show that "(1) [he is a member] of a racial minority [group]; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 44–45 (D.D.C. 2003) (quotation marks omitted; first alteration added); *see also Hajjar-Nejad*, 37 F. Supp. 3d at 128 (explaining that under § 1981 a plaintiff must show that he "suffer[ed] an adverse action that gives rise to an inference of discrimination" (quotation marks omitted)). Individual "supervisors who take actions in violation of Section 1981" may themselves be liable. *Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 136 (D.D.C. 2011).

Section 1981 claims are subject to a four-year statute of limitations. *See* 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372 (2004). Plaintiff filed his

Complaint on November 26, 2018; therefore, any claim under § 1981 relating to conduct that occurred prior to November 26, 2014 (most of Plaintiff's first semester at the University) is time-barred under the four-year statute of limitations.  It thus appears that the allegations from paragraphs 18 through 22 are time-barred.[9]

Plaintiff has not pointed to any written contract.  He has alleged only (in the count relating to his breach of contract claim) that a contract "was created when Plaintiff elected to attend GWU and participate on its tennis team."  Compl. ¶ 110.  If any contract was created, it was Plaintiff's agreement to enroll at the University—i.e., Plaintiff's payment of tuition in exchange for his receipt of an education.  *See Manago v. District of Columbia*, 934 A.2d 925, 927 (D.C. 2007) ("recogniz[ing] the general rule 'that the relationship between a university and its students is contractual in nature'" (quoting *Basch v. George Wash. Univ.*, 370 A.2d 1364, 1366 (D.C. 1977))).  It cannot be that an enforceable contract was created when Plaintiff chose to "participate on [the University's] tennis team."  Compl. ¶ 110.  Plaintiff has not alleged that the University promised him anything regarding his participation on the tennis team in exchange for appropriate consideration.  He has not alleged that he received a scholarship, that his acceptance to the University was conditioned on him playing tennis, or even that he was guaranteed a spot on the team while he was enrolled at the University.

The only adverse action Plaintiff has alleged that is related to a plausible contract with the University is his academic suspension.  But as explained above, Plaintiff has not alleged that he was suspended because he is an African American and, in fact, he concedes that he was suspended

---

[9]  In paragraph 23 of the Complaint, Plaintiff states that "most of the instances above happened throughout Plaintiff's tenure."  However, whenever time periods are given in paragraphs 18 through 22, they suggest that the conduct likely occurred before November 25, 2014.  Regardless, it is Plaintiff's burden to "identify the date(s)" when the allegedly discriminatory actions occurred.  *Poola*, 147 A.3d at 275.

because of his failure to maintain the required minimum GPA.  Compl. ¶ 90 ("GWU academically suspended Plaintiff for failure to maintain the required GPA."); Ex. A at 3–4 (acknowledging that "there are so many things [he] could have done differently," he "poorly . . . handled being a student athlete," and he "allowed [himself] to be placed in the position" of failing out of school).  His § 1981 claim thus fails on its face.  *See Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 68–69 (D.D.C. 2008) (explaining that a claim under § 1981 requires a plaintiff to show "intent to discriminate on the basis of race"); *see also Chenari v. George Wash. Univ.*, 847 F.3d 740, 744 (D.C. Cir. 2017) ("In breach of contract cases against a university, 'a judgment by school officials that a student has not performed adequately to meet the school's academic standards is a determination that usually calls for judicial deference.'" (quoting *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1108 (D.C. 1999))).

Even if the unidentified contract between Plaintiff and the University extended to his participation on the tennis team, none of the three alleged incidents in which he was suspended or removed from the team can conceivably support a § 1981 claim.[10]  As explained above, Plaintiff's temporary removal from the team and his one-day suspension by Macpherson were not adverse actions and he did not plead that those actions were motivated by discriminatory animus.  *See* Compl. ¶¶ 75–78, 82.  The lack of an adverse action and the failure to plead a discriminatory motive each compels dismissal.  *Hajjar-Nejad*, 37 F. Supp. 3d at 128–29; *Sheller-Paire*, 888 F. Supp. 2d at 41.

Plaintiff's first temporary suspension from the team in January 2015 also cannot support a § 1981 claim.  Like his temporary removal in 2016 and one-day suspension in 2017, Plaintiff's

---

[10]  Plaintiff alleges that (1) he was temporarily suspended from the team by Munoz in January 2015; (2) he was removed from the team in the fall semester of 2016; and (3) he was suspended for one practice day by Macpherson in early 2017.  *See supra* at 1–4.

January 2015 suspension did not "cause him 'objectively tangible harm,'" and thus was not an adverse action. *See Hajjar-Nejad*, 37 F. Supp. 3d at 128–29. Unlike those actions, Plaintiff has alleged that Munoz's reasons for the January 2015 suspension from the team "were false and pretext for his discrimination." Compl. ¶ 27; *see also id.* ¶ 34. Even if the January 2015 suspension constituted adverse action, this claim still fails because his assertion of pretext is a bare legal conclusion that cannot be afforded the presumption of truth. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Ey v. Office of Chief Admin. Officer of U.S. House of Representatives*, 967 F. Supp. 2d 337, 344 (D.D.C. 2013) (dismissing claim where plaintiff failed to allege facts "sufficient to establish pretext or discrimination"); *Brady v. U.S. Capitol Police*, 200 F. Supp. 3d 208, 214 n.3 (D.D.C. 2016) (dismissing retaliation claim for, among other things, failing to "allege facts supporting th[e] conclusion" that "the defendant's explanation for the plaintiff's discipline" was "pretext"). Indeed, Plaintiff's conclusory allegations are contradicted by his acknowledgment elsewhere that Munoz's reasons for the suspension were not "false." Plaintiff asserts that Munoz's view that Plaintiff was disrespectful toward his teammates "stemmed [from] Plaintiff's social withdrawal from the team," Compl. ¶ 28, and that an incident with the director of the Southeast Tennis and Learning Center was "one big misunderstanding," *id.* ¶ 31. Those allegations "weaken[ ] a complaint that is already barren of factual allegations that could give rise to an inference that any of the adverse . . . actions of which the plaintiff complains were based on considerations of race." *Easaw*, 253 F. Supp. 3d at 32.

Finally, defendants who are not alleged to be involved in an adverse action may not be held liable. *See Brown*, 773 F. Supp. 2d at 136. Early was not involved—or even alleged to be involved—in the decision to suspend Plaintiff from the University. Similarly, Early is not alleged

to have had any involvement in Plaintiff's removal or second suspension from the tennis team. *See* Compl. ¶¶ 75–76, 80, 82.[11]

### B.  Plaintiff Fails To State A Claim For Breach Of Contract (Count IV).

"In the case of a claim for breach of contract, the complaint must allege four necessary elements in order to effect fair notice:  '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Ihebereme*, 730 F. Supp. 2d at 47 (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)).  The statute of limitations for breach of contract is three years.  D.C. Code § 12-301(7).  Any alleged breach, therefore, must have occurred on or after November 26, 2015.

Plaintiff's bare allegations, even assumed to be true, do not show any of the required elements.  *First*, Plaintiff alleges that a contract "was created when Plaintiff elected to attend GWU and participate on its tennis team."  Compl. ¶ 110.  But as explained above, Plaintiff has not attached a written agreement, and the only plausible contract that could have been created does not encompass a promise regarding his participation on the tennis team.  *See supra* at 14. Moreover, Plaintiff's breach of contract claim must be dismissed to the extent it simply restates his statutory discrimination claims, because "a pre-existing legal obligation does not create mutuality of obligation and cannot give rise to an enforceable contract."  *Di Lella*, 570 F. Supp. 2d at 11 (dismissing student's breach of contract claim alleging failure to provide disability

---

[11]  There also is no allegation that any of the other Individual Defendants was involved in the decision to suspend Plaintiff from the University.  As for the tennis team suspensions and removal:  there is no allegation that Nero was involved in any of these incidents; there is no allegation that Munoz was involved in the removal or second suspension; and there is no allegation that Macpherson was involved in the first suspension or the removal.  *See* Compl. ¶¶ 25–33, 75–76, 80, 82.

accommodation); *see also Wanko*, 2009 WL 3052477, at *4 (dismissing student's breach of contract claim alleging various discriminatory acts).

**Second** and related, Plaintiff alleges that "there was an agreement as to all material terms," but he does not state what those terms were.  Compl. ¶ 112.  Indeed, he completely fails to state **any** obligation or duty the University owed to him.  *See Ford v. Suntrust Mortg.*, 282 F. Supp. 3d 227, 233 (D.D.C. 2017) (dismissing breach of contract claim because "Plaintiffs fail to provide the Court with fundamental facts," such as "specific contract terms Defendants are alleged to have breached"); *Ihebereme*, 730 F. Supp. 2d at 47–48 (dismissing breach of contract claim for failing to include "any allegation as to the existence of any duty relevant to the breach claimed"); *Manago*, 934 A.2d at 927 (concluding that plaintiff "fails to allege sufficient facts to demonstrate either the terms of the contract or reason to think it was breached").  It is, nevertheless, clear that the University owed him no duty with respect to his participation on the tennis team.  The University's Student Athlete Handbook clearly explains that "[s]tudent-athlete participation in any aspect of [its] intercollegiate athletics program or its support services is considered a privilege rather than a right."  Ex. B at 8 (2014–2015 ed.).

**Third**, Plaintiff does not allege what action taken by the University breached the unspecified obligation or duty.  *See* Compl. ¶ 114.  A complaint that does not identify "an action or omission constituting a material breach . . . is not sufficient to place [defendants] on notice of the claims against them" and should be dismissed.  *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1024 (D.C. 2013); *Ju v. Carter*, No. 14-cv-391, 2015 WL 5168251, at *4 (D.D.C. Aug. 31, 2015) (dismissing breach of contract claim for "fail[ing] to identify an obligation or duty . . . that was breached"); *Saha v. George Wash. Univ.*, 577 F. Supp. 2d 439, 443 (D.D.C. 2008) (dismissing breach of contract claim "[b]ecause plaintiff has not identified specific breached provisions" of the

alleged contract).  Even if the Court is extremely generous and attempts to construe some of his factual allegations as providing the substance of a breach of contract, they do not hold water, for the reasons explained above with respect to Plaintiff's § 1981 claim.  *See supra* at 13–16.  Indeed, despite his assertion that he "adhered to all of the terms and conditions of the contract between himself and GWU," Compl. ¶ 113, the facts alleged compel the opposite conclusion:  If anyone breached a contract, it was Plaintiff.  Under D.C. law, a contract between a university and a student "is premised on the notion that if the student complies with the university's academic standards and completes his or her degree requirements, he or she will be entitled to receive a degree." *Alden*, 734 A.2d at 1111 n.11.  Plaintiff was aware of the University's academic requirements.  For example, when he was placed on academic probation in September 2017, he signed an Agreement of Academic Expectations, which explained that a student's failure to meet the University's academic "**requirements may result in suspension from the University**."  Ex. G (emphasis in original).  That Agreement would be part and parcel of any contract Plaintiff had with the University and, thus, is fairly incorporated into the Complaint.  Plaintiff concedes that he failed to uphold his end of the bargain.  *See* Compl. ¶ 90.

Similarly, Plaintiff alleges that maintenance of his spot on the tennis roster was governed by "GWU athletic department and NCAA rules and regulations."  Compl. ¶ 77; *see also id.* ¶ 34.  The University's Student Athlete Handbook provides that "[p]articipation is subject to approval by the Director of Athletics and Recreation, who may suspend or revoke, in part or in totality, that privilege for failure to meet the responsibilities described in [the handbook]," and that "[i]n the absence of the Director of Athletics and Recreation and sport administrator, the head coach may impose sanctions on a student-athlete for violations of the Department of Athletics and Recreation 'expectations of the student-athlete.'"  Ex. B at 8.  Those "expect[ations]" include "exhibit[ing]

good sportsmanlike conduct at all times." *Id.* at 10.  Poor sportsmanship includes, but is not limited to, behavior such as physical or verbal abuse of "officials, opponents, spectators, coaches or the media." *Id.*  Plaintiff's own allegations confirm that he failed to abide by those expectations.  *See* Compl. ¶¶ 60, 63, 82.[12]

Further, despite alleging the existence of an implied covenant of good faith and fair dealing, *id.* ¶ 111, Plaintiff has not alleged that the University breached the covenant, *see id.* ¶ 114.  Even if such a claim were imputed, it must be dismissed because "breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under established cause of action." *Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, Nos. 04-cv-838, 04-cv-687, 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006); *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 2002).  Regardless, the covenant is only enforceable in relation to the contract's material terms.  *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (the covenant "means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (quotation marks omitted)); *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) ("If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing.").  Because Plaintiff has not alleged what the terms of the contract were, there is no basis to measure whether that covenant has been breached.

***Fourth*** and finally, Plaintiff has not alleged any injury or damages resulting from the alleged breach of contract.  Plaintiff alleged that his purported injury is "a result of Defendant's

---

[12]  The NCAA's rules are irrelevant here.  Those rules are focused on recruiting, progress toward degree completion, amateurism, and school transfers, not internal discipline of non-scholarship players such as Plaintiff.  Ex. B at 13–34.

[sic] *discriminatory* conduct," not any breach of contract.   Compl. ¶ 93 (emphasis added).

Therefore, even if there is a contract that created an obligation or duty that the University breached,

Plaintiff has not alleged a compensable injury that flows from the breach of contract.   *See*

*Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 297 F. Supp. 3d 106, 114 (D.D.C. 2018)

(dismissing contract claim because plaintiff had "not pled that it suffered any harm in connection

with" the alleged breach).

## IV.   Plaintiff's Negligence Claims Fail As A Matter Of Law.

Plaintiff's last set of counts raise claims sounding in negligence.   First, Plaintiff alleges

negligent infliction of emotional distress.   Compl. ¶¶ 115–24.   Second, he alleges that the

University was negligent in its supervision and retention of Munoz, *id.* ¶¶ 125–33, and in its

supervision of Macpherson and Nero, *id.* ¶¶ 125–27, 134.

As a threshold matter, both negligence claims must be dismissed to the extent the Court

finds that a contract existed between Plaintiff and the University that creates the purported rights

at issue.   *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008).   Under D.C.

law, a "tort must exist in its own right independent of the contract, and any duty upon which the

tort is based must flow from considerations other than the contractual relationship.   The tort must

stand as a tort even if the contractual relationship did not exist." *Id.*   "Since all the torts [Plaintiff]

asserts arose from his contractual relationship with [the University], and do not exist independently

of that contractual relationship, he cannot maintain an action in tort," including against the

Individual Defendants.   *Amin v. Nyack Sch. of Adult & Distance Educ.*, 710 F. Supp. 2d 80, 83

(D.D.C. 2010).

Regardless, both counts should be dismissed for multiple reasons independent of the

existence of a contract.

**A.  The Complaint Fails To State A Claim For Negligent Infliction Of Emotional Distress (Count V).**

Under D.C. law, a plaintiff may recover for negligent infliction of emotional distress ("NIED") under two separate tests.  The "zone of danger" test allows a plaintiff to recover "for mental distress if the defendant's actions caused the plaintiff to be 'in danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'" *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796 (D.C. 2011) (en banc) (quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990) (en banc)); *see also Lesesne v. District of Columbia*, 146 F. Supp. 3d 190, 195 (D.D.C. 2015).  Alternatively, NIED claims are permitted where there is a particular type of "special relationship" between the parties.  *See, e.g.*, *Hedgepeth*, 22 A.3d at 810–11.

NIED claims are subject to a three-year statute of limitations.  D.C. Code § 12-301(8).  "However, a claim for emotional distress that is intertwined with any of the causes of action for which a period of limitation is specifically provided . . . is subject to the limitation period for the intertwined claim."  *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997) (quotation marks omitted).  "Here, plaintiff's emotional distress claim is based on the exact same conduct that forms the basis of [his] DCHRA claims; therefore, the claims are intertwined, and the emotional distress claim assumes the DCHRA claims' one-year statute of limitations period."  *Munoz v. Bd. of Trs. of Univ. of D.C.*, 590 F. Supp. 2d 21, 26–27 (D.D.C. 2008); *see* Compl. ¶¶ 116, 118, 121–22, 124 (alleging NIED violation based on "discriminatory conduct" and similar formulations).

Plaintiff alleges that "Defendant GWU's negligent conduct placed Plaintiff in the zone of immediate physical danger, causing him to fear for his own safety."  Compl. ¶ 122; *see also id.* ¶ 124.  He states that this fear was "a direct and proximate result of the discriminatory and unsafe educational environment created by Defendant's negligent response to the persistent

discriminatory conduct." *Id.* ¶ 122.  Plaintiff further alleges that "Defendant GWU had a special

relationship with, or had undertaken a special obligation to Plaintiff of a nature that necessarily

implicated Plaintiff's emotional wellbeing," and that "[a]s a result of [GWU's] negligence, GWU

stalled Plaintiff's tennis career, caused him not to graduate from the university with a degree and

caused him severe emotional distress." *Id.* ¶¶ 120, 123.

Substantively, Plaintiff's claim fails as a matter of law under both the zone of danger test

and the special relationship test.  To begin, Plaintiff has not alleged facts sufficient to "constitute

severe emotional distress, which must be of so acute a nature that harmful physical consequences

might be not unlikely to result." *Bonner v. S-Fer Int'l, Inc.*, 207 F. Supp. 3d 19, 26 (D.D.C. 2016)

(Cooper, J.) (quotation marks omitted).  Plaintiff alleges that he "worr[ied] about his mental

health," lost interest in "things," and "lost all of his confidence."  Compl. ¶ 90.  But "[m]ental

distress is not enough." *Bonner*, 207 F. Supp. 3d at 26 (quotation marks omitted); *Hawkins v.*

*Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 108 (D.D.C. 2018) (dismissing NIED claim

for lack of allegation of "serious, physical manifestations of emotional distress" despite allegations

including that plaintiff was "unable to feel safe while going outside" and suffers from ongoing

"emotional and psychological trauma"); *see also* Restatement (Second) of Torts § 313 Cmt. 1(a)

(1965) (disclaiming "protection to mental and emotional tranquility").[13]

Furthermore, Plaintiff's claim that he was in a zone of danger is supported by no fact

alleged in the Complaint.  NIED is based on physical harm.  Although "[a] plaintiff need not show

---

[13]  Plaintiff also fails to plausibly allege that any mental distress he did suffer was caused by
negligent conduct on the part of the University or the Individual Defendants. *See Hedgepeth*,
22 A.2d at 796.  In his appeal of his academic suspension, Plaintiff explained that he "put too
much stress *on myself* both physically and mentally" and described familial issues that were
"slowly tearing [him] up."  Ex. A at 3–4 (emphasis added).  Nowhere does he describe mental
distress caused in any way by the University or the Individual Defendants.

actual physical impact" to prove that a defendant negligently caused him distress, "she must show that she actually feared for her [physical] safety as a result of [the defendant's] conduct." *Hollis v. Rosa Mexicano DC, LLC*, 582 F. Supp. 2d 22, 27 (D.D.C. 2008) (quotation marks omitted; first alteration added). Unlike, for example, the discharge of a firearm in the vicinity, *see District of Columbia v. Evans*, 644 A.2d 1008, 1019 (D.C. 1994); *McMillan v. Nat'l R.R. Passenger Corp.*, 648 A.2d 428, 434–35 (D.C. 1994) (discussing *Evans*), there are simply no facts in the Complaint indicating Plaintiff was ever in physical danger, much less that his "presence in the zone of danger [was] contemporaneous with [his] fear for [his] own safety," *Jane W. v. President & Dirs. of Georgetown Coll.*, 863 A.2d 821, 826 (D.C. 2004) (quotation marks omitted). To the extent Plaintiff relies on the alleged incidents involving his "Indian teammate," that only underscores that **Plaintiff** was not in danger of physical injury and did not contemporaneously fear for his physical safety. Compl. ¶ 89; *see also id.* ¶ 92.[14]

Plaintiff's attempt to invoke the "special relationship" theory of liability also fails. "[A] plaintiff may recover for negligent infliction of emotional distress if the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Hedgepeth*, 22 A.3d at 810–11. In *Hedgepeth*, the court stressed that, to qualify as "special," a relationship must involve "the emotional well-being of others . . . at [its] core," or must "necessarily implicate[ ]" such well-

---

[14]   The allegation that an assistant coach was a "careless" driver falls outside of both the one-year and three-year limitations periods. *See* Compl. ¶ 21.

being.  *Id.* at 814.  A special relationship is also implicated where emotional distress damages "may well be the only or most significant damages resulting from the negligent conduct" that results from the "undertaking" at issue—such as from a "hospital's false report of death" to a loved one or "a funeral home's mishandling of a corpse."  *See id.* at 814.

The University-student relationship is far different than the type of relationship that is required for NIED liability under the special relationship theory.  Unlike doctors and appointed guardians and counsel for children, the elderly, and the disabled, who in certain circumstances (but not always) can form special relationships that open up the possibility of damages for NIED, the emotional well-being of college students is not "at the core" of the relationship between an adult college student and his university.  *Hedgepeth*, 22 A.3d at 814–15.  Unlike perhaps a daycare center or a nursing home, "the modern American college is not an insurer of the safety of its students."  *Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979).  And unlike hospital administrators and morticians, the University here is not inherently in the position of managing the sensitive and emotionally draining tasks associated with death, nor is it even within the realm of possibility that "the only or most significant damages resulting from [a university's] negligent conduct" would be emotional distress.  *Hedgepeth*, 22 A.3d at 814.  Indeed, even in the context of an elementary or secondary school, the D.C. Court of Appeals has held that "[t]he relationship between a student and his school . . . is not enough, without more, to impose the predicate duty of care for a claim of negligent infliction of emotional distress."  *Sibley v. St. Albans Sch.*, 134 A.3d 789, 798 (D.C. 2016).   The Complaint here provides no allegation that the University "affirmatively" "undertook a responsibility to protect" Plaintiff in particular from a particular type of harm.  *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 40 (D.D.C. 2018) (holding that NIED claim survived motion to dismiss where university told rape victim that it would enforce a

no-contact order between her and her attacker); *Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 182 (D.D.C. 2017) (dismissing NIED claim for lack of special relationship, "[e]ven accepting as true the existence of a special relationship" with respect to student-athletes' head injuries, because that relationship did not "necessarily implicate[ ] the plaintiff's emotional well-being"); *Taghioskoui v. George Wash. Univ.*, No. 2012 CA 007207B, slip op. at 8 (D.C. Super. Ct. Feb. 5, 2015) ("Indeed, if the graduate student-faculty advisor/professor relationship was considered a special relationship, then practically, every disgruntled student who disagrees with their professor's supervision would have a cause of action.").

Moreover, Plaintiff has not "satisfied the second *sine qua non* of the negligent-infliction cause of action:  that Defendant['s] conduct was outrageous."  *Asare v. LM-DC Hotel, LLC*, 62 F. Supp. 3d 30, 35 (D.D.C. 2014).  There is no allegation that the University acted outrageously.  On the contrary, the Complaint makes it clear that whenever administration officials were told of alleged problems with the tennis team, they acted promptly to look into and address those problems.  *See* Compl. ¶¶ 28, 32, 68, 71, 76–78.  That would be true even if the alleged conduct of Plaintiff's fellow students could somehow be imputed to the University (it cannot).  *See Bonner*, 207 F. Supp. 3d at 25 (quotation marks and alteration omitted) (explaining in context of intentional infliction of emotional distress claim that "behavior that is insulting . . . as a legal matter . . . is not the sort of extreme and outrageous conduct covered by" the tort).  Plaintiff thus fails to state a NIED claim as a matter of law.[15]

Finally, the NIED count should be dismissed insofar as it purports to be brought against Early—or, indeed, any of the Individual Defendants.  *See* Compl. ¶ 31 (styling NIED count as

---

[15]  Even if the three-year statute of limitations applies, the Complaint does not include any facts from that expanded time period that would support an NIED claim.

"Against All Defendants").  The allegations in the NIED count mention only the University;

Plaintiff asserts no allegation of NIED against any of the Individual Defendants.

**B. The Complaint Fails To State A Claim For Negligent Retention Or Negligent Supervision (Count VI).**

"To prevail on a theory of negligent hiring, retention, or supervision, 'it is incumbent upon

a party to show that an employer knew or should have known its employee behaved in a dangerous

or otherwise incompetent manner, and that the employer, armed with that actual or constructive

knowledge, failed to adequately supervise the employee.'"  *Kohler v. HP Enter. Servs., LLC*, 212

F. Supp. 3d 1, 23 (D.D.C. 2016) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985));

*see also Thorp v. District of Columbia*, 319 F. Supp. 3d 1, 21 (D.D.C. 2018) (noting that "D.C.

case law does not appear to distinguish between negligent supervision and negligent retention"

claims (quotation marks omitted)).  Further, negligent retention and supervision claims "may be

predicated only on common law causes of action or duties otherwise imposed by the common

law." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007); *Raihan v. George Wash.

Univ.*, 324 F. Supp. 3d 102, 114 (D.D.C. 2018).  Negligent retention and supervision claims are

subject to a three-year statute of limitations.  D.C. Code § 12-301(8).  Only allegations from

November 26, 2015, and later could be actionable.

Plaintiff's claims fail as a matter of law.  *First* and foremost, a negligent retention or

supervision claim predicated on a violation of a discrimination statute, including the DCHRA,

Title VI, or § 1981, is not cognizable.  *See, e.g.*, *Raihan*, 324 F. Supp. 3d at 114–15 (holding that

negligent retention cannot be predicated on sexual harassment); *Tridico v. District of Columbia*,

130 F. Supp. 3d 17, 32 (D.D.C. 2015) ("Plaintiff fails to show any evidence of independent tortious

conduct distinct from the alleged harassment . . ., so this claim is preempted by Title VII.");

*Uzoukwu v. Metro. Wash. Council of Gov'ts*, 983 F. Supp. 2d 67, 95–96 (D.D.C. 2013) (holding

that "claims of racial harassment which do not have their basis in common law duties, but instead are based on statutory rights . . . cannot support a negligent supervision claim"); *Griffin*, 925 A.2d at 576–77 (holding that negligent supervision cannot be predicated on sexual harassment); *Demby v. Preston Trucking Co.*, 961 F. Supp. 873, 882 (D. Md. 1997) (concluding that "Title VII may not form the predicate for claims of negligent retention and supervision").

**Second**, for the reasons discussed at length above, Plaintiff has not satisfactorily pleaded the claims upon which his negligent retention and supervision claims are predicated. *See supra* at 7–16. If the predicate claims are dismissed, the negligent retention and supervision claims must be dismissed, too.

**Third** and related, the Complaint does not provide facts sufficient to create a plausible inference that the University knew or should have known of dangerous or incompetent behavior by Nero, Macpherson, and Munoz that the University should have addressed. As to Nero and Macpherson, Plaintiff alleges merely that "Defendants knew of serious discriminatory conduct and other misconduct" by them. Compl. ¶ 134. But Nero is mentioned just once in the Complaint's factual allegations, and that allegation does not assert that Nero engaged in discriminatory conduct—or any conduct for that matter. *Id.* ¶ 32 ("Plaintiff's father asked if he could speak with Patrick Nero . . . . Early and Munoz responded that he could not speak with Mr. Nero because they were handling it."). And Plaintiff does not allege that Macpherson discriminated against him, much less that the University should have been aware of any such discrimination. *See, e.g.*, *id.* ¶ 82 (alleging one-day suspension but not asserting that the suspension was appealed or that any administrator was otherwise told about the suspension).

As for Munoz, Plaintiff asserts that the University knew that "Munoz improperly and illegally suspended Plaintiff from the Men's tennis team, and illegally demanded that Plaintiff

pledge for a predominantly White fraternity as a condition of reinstating him." *Id.* ¶ 128. But as the Complaint itself describes, Early met with Plaintiff and his father about the suspension from the team; at that meeting, legitimate, nondiscriminatory reasons were given for the suspension. *Id.* ¶ 28. Plaintiff's allegation that those justifications were pretext is a legal conclusion dressed up as fact and is contradicted by some of his own allegations. The suspension from the team (which as explained above carried no material consequences) was well within the bounds of the applicable University rules. *See supra* note 8. The Complaint's insinuation that the University could be liable for negligent supervision stemming from Munoz's suggestion that Plaintiff join a fraternity is similarly implausible. Plaintiff has not alleged that Munoz even knew the fraternity was a "White" fraternity (whatever that means), nor has he provided any facts sufficient to support a plausible inference that the University should have been aware of this supposed condition on his reinstatement following his suspension. Compl. ¶¶ 38–40.

Indeed, Plaintiff takes care throughout the Complaint to document the meetings he and his father had with coaching staff and athletics department and University administrators, who took every opportunity to try to help Plaintiff succeed on the team. *See, e.g.*, Compl. ¶¶ 28, 32, 68, 71, 76–78, 83–84. For example, when Plaintiff complained to the University administration in the fall semester of 2016 that he had been allegedly removed from the team, they worked to get him a tryout. *See id*. ¶¶ 77–78. After Plaintiff's tryout, Macpherson sent the tennis team a message explaining to them that Plaintiff had not been "officially taken off the team last year" and that Plaintiff "showed a lot of potential" in the tryout. *Id.* ¶ 80 (quotation marks omitted).[16] Plaintiff's

---

[16] Plaintiff even explains that the University has been attentive to conduct that did not concern Plaintiff. *See id.* ¶ 89 (alleging that when another member of the team complained of inappropriate behavior by a teammate Macpherson "tried to get [the offending player] to apologize").

father and Coach Macpherson "had an open line of communication and did communicate at various times," and Plaintiff's father had "respect for [Coach Macpherson] and his tennis program." *Id.* ¶ 83.  The University thus took appropriate measures to oversee its employees.  *See, e.g.*, *Phelan v. City of Mount Rainier*, 805 A.2d 930, 937 (D.C. 2002) (finding that an employer's liability for "intentional acts committed by an employee who causes harm" is dependent "upon the employer's direct negligence").[17]

## V.    Plaintiff's Demand For Punitive Damages Should Be Dismissed.

As a final matter, Plaintiff's prayer for punitive damages cannot be maintained with respect to any of the six counts.  *See* Compl. at 35.

*DCHRA.*   To obtain punitive damages under the DCHRA, a plaintiff must show not just "discriminatory action," but also "outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights."  *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 372 (D.C. 1993) (quotation marks omitted).  The Complaint does not plausibly allege that Defendants engaged in outrageous and malicious conduct.  *Primas*, 718 F. Supp. 2d at 61–62 (dismissing prayer for punitive damages because the complaint "fails to allege facts showing that [defendant] acted with the actual malice or evil motive necessary to sustain her claim for punitive damages").

---

[17]  If the Court dismisses all of Plaintiff's federal claims, it should retain jurisdiction over and dismiss with prejudice Plaintiff's claims brought under D.C. law.  Plaintiff asserts not just supplemental jurisdiction under 28 U.S.C. § 1367 (Compl. ¶ 11), but also diversity jurisdiction under 28 U.S.C. § 1332 (Compl. ¶ 12).  Even if supplemental jurisdiction were the only basis for retaining jurisdiction, Plaintiff chose to bring the claims in federal court, which weighs strongly in favor of retaining jurisdiction. *See, e.g.*, *Raihan*, 324 F. Supp. 3d at 105 n.1 (noting supplemental jurisdiction over D.C. law claims and dismissing complaint in full); *Woytowicz v. George Wash. Univ.*, 327 F. Supp. 3d 105, 125 (D.D.C. 2018) (declining to exercise supplemental jurisdiction where the plaintiff "originally filed [his] action in D.C. Superior Court").  Moreover, the D.C. law claims are factually intertwined with the federal discrimination claims and do not "raise[ ] a novel or complex issue of State law."  28 U.S.C. § 1367(c)(1).

**Title VI.**   The Supreme Court has held that "punitive damages may not be awarded in private suits brought under Title VI." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

**Section 1981.**   Punitive damages are recoverable for a violation of § 1981 where the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."   42 U.S.C. § 1981a(b)(1).   It is not enough to plausibly allege intentional discrimination.   *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999).   A complaint must plausibly allege that "defendant's conduct is . . . motivated by evil motive or intent, or . . . involves reckless or callous indifference." *Id.* at 536 (quotation marks omitted).   The Complaint "simply does not contain enough factual information to plausibly suggest the requisite state of mind—here that the [University] discriminated in the face of a perceived risk that its actions [would] violate federal law." *Shukh v. Seagate Tech., LLC*, 873 F. Supp. 2d 1087, 1092 (D. Minn. 2012) (dismissing claim for punitive damages where Plaintiff's allegation that Defendant engaged in "extreme pattern of discrimination" was "not entitled to the presumption of truth" under *Iqbal* because it was "conclusory" (quotation marks omitted)).

**Breach of Contract.**   Under D.C. law, punitive damages are not available for breach of contract, except in the rare circumstance "where the alleged breach of contract merges with, and assumes the character of, a willful tort." *Choharis*, 961 A.2d at 1090 (quotation marks omitted). A willful tort is "calculated rather than inadvertent, flagrant, and in disregard of obligations of trust." *Brown v. Coates*, 253 F.2d 36, 39 (D.C. Cir. 1958), *cited in Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982).   Plaintiff has not alleged a willful tort, much less any conduct that may plausibly evidence behavior that is "calculated . . . flagrant, and in disregard of obligations of trust." *Id.*

31

***Negligence Claims.***  Punitive damages may be "available in actions for intentional torts," *Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C. 1988), and "[t]he defendant's tortious conduct must have been outrageous, characterized by malice, wantonness, gross fraud, recklessness, or willful disregard of the plaintiff's rights," *Choharis*, 961 A.2d at 1090 (quotation marks omitted); *see also Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995), *opinion amended on denial of reh'g*, 681 A.2d 1097 (D.C. 1996).  The Complaint not only does not include an intentional tort claim, but also is devoid of any alleged conduct that may plausibly support the required state of mind.  *See Bradley*, 249 F. Supp. 3d at 169 n.9 (holding on motion to dismiss that "plaintiff has not made a showing sufficient to establish that the NCAA committed an intentional tort against her that was replete with malice" (quotation marks omitted)); *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 29 (D.D.C. 2008) (denying punitive damages as part of default judgment because "District of Columbia law does not allow punitive damages for negligence claims").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

Dated:  January 22, 2019                        Respectfully submitted,

                                           /s/ *Jason C. Schwartz*

                                         Jason C. Schwartz (DC Bar No. 465837)
                                         Andrew G. I. Kilberg (Application Pending)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, DC  20036
                                         Telephone:  202.955.8500
                                         Facsimile:  202.530.9522
                                         jschwartz@gibsondunn.com
                                         akilberg@gibsondunn.com

                                         *Attorneys for Defendants George Washington*
                                         *University and Nicole Early*

## <u>CERTIFICATE OF SERVICE</u>

I, Jason C. Schwartz, an attorney for Defendants George Washington University and Nicole Early, hereby certify that on this 22nd day of January, 2019, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of Columbia on all parties registered for CM/ECF in the above-captioned matter.

I further certify that on this 22nd day of January, 2019, out of an abundance of caution and because Plaintiff only recently became registered on CM/ECF, I caused copies of the foregoing document to be served via next day UPS delivery to 6491 Woodbine Avenue, Philadelphia, Pennsylvania, 19151, and via electronic mail to jbarstaffz@gmail.com.

/s/ *Jason C. Schwartz*
Jason C. Schwartz