**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JABARI STAFFORD,

                Plaintiff,

v.

THE GEORGE WASHINGTON
UNIVERSITY,

                Defendant.

Case No. 1:18-cv-02789-CRC

**DEFENDANT THE GEORGE WASHINGTON UNIVERSITY'S OPPOSITION TO**
**PLAINTIFF'S MOTION TO QUASH SUBPOENAS DIRECTED TO**
**BLAKE MORTON, AMLAN SAHOO AND WILLIAM "WILLS" TUTECKY**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................ 1

II.   STANDARD OF REVIEW .................................................... 2

III.  RELEVANT FACTS AND PROCEDURAL HISTORY .................. 3

IV.   ARGUMENT .................................................................... 6

    A.    Plaintiff's Text Messages With Third Parties Do Not Satisfy The Elements Of The Attorney Work-Product Doctrine ................ 6

    B.    Plaintiff Has Waived Work-Product Protection By Producing Certain Texts To The University, And By Disclosing Supposed Work Product To Third Parties ................ 9

    C.    There Is No Basis For Plaintiff's Invocation Of The Common Interest Exception To The Waiver Doctrine ................ 11

    D.    The Subpoenaed Communications Must Be Produced In Accordance With The Crime-Fraud  Exception To The Work-Product Doctrine ................ 12

    E.    Even If The Subpoenaed Communications Qualified As Work Product, They Must Be Produced Because The University Has A Substantial Need For Them ................ 13

V.    CONCLUSION .................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. FBI*,
    192 F.R.D. 42 (D.D.C. 2000)...................................................................................7, 8

*Bowles v. Nat'l Ass'n of Home Builders*,
    224 F.R.D. 246 (D.D.C. 2004)....................................................................................10

*Coastal Gas States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) .....................................................................................6

*Cobell v. Norton*,
    212 F.R.D. 24 (D.D.C. 2002).........................................................................................8

*Hertzberg v. Veneman*,
    273 F. Supp. 2d 67 (D.D.C. 2003) ...............................................................................2

*United States ex rel. Landis v. Tailwind Sports Corp.*,
    303 F.R.D. 419 (D.D.C. 2014) (Cooper, J.).........................................................13, 14

*Mischler v. Novagraaf Grp. BV*,
    No. 1:18-cv-2002, 2019 WL 6135447 (D.D.C. Nov. 19, 2019)...................................2

*Schanfield v. Sojitz Corp. of Am.*,
    258 F.R.D. 211 (S.D.N.Y. 2009) ................................................................................12

*In re Sealed Case*,
    146 F.3d (D.C. Cir. 1998) .............................................................................................7

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) .................................................................1, 3, 12, 13

*In re Sealed Case*,
    754 F.2d 395 (D.C. Cir. 1985) .....................................................................................3

*In re Subpoenas Duces Tecum*,
    738 F.2d 1367 (D.C. Cir. 1984) .................................................................................10

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
    315 F.R.D. 103 (D.D.C. 2016)......................................................................................9

*United States v. Am. Tel. and Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) .........................................................................11, 12

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ..............................................................................2, 7

## TABLE OF AUTHORITIES
(*continued*)

Page(s)

*United States v. ISS Marine Servs.*,
   905 F. Supp. 2d 121 (D.D.C. 2012) ............................................................2, 3, 7, 8

*United States v. Nobles*,
   422 U.S. 225 (1975) ..................................................................................................6

*United States v. Philip Morris USA, Inc.*,
   No. Civ. A. 99-2496 (GK), 2004 WL 5355972 (D.D.C. Feb. 23, 2004) ..................6

*United States v. Phillip Morris*,
   212 F.R.D. 421 (D.D.C. 2002) ..............................................................................2, 3

*Wadelton v. Dep't of State*,
   208 F. Supp. 3d 20 (D.D.C. 2016) ...........................................................................1

*Washington v. Thurgood Marshall Academ.*,
   232 F.R.D. 6 (D.D.C. 2005) ......................................................................................6

**Other Authorities**

8 Fed. Prac. & Proc. Civ. § 2024 (3d ed. 2010) .............................................................7

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) ....................................................................................2, 3, 7, 14

Fed. R. Civ. P. 26(b)(5) .................................................................................................6

# I.  INTRODUCTION

This Court asked Plaintiff's counsel whether he was "directing" Plaintiff to "contact witnesses" for purposes of this litigation, and Plaintiff's counsel responded, "No, Your Honor . . . ***I'm not doing that.***"  Ex. A at 47:2-5 (emphasis added).  Now, however, Plaintiff's counsel has filed a Motion to Quash the third-party subpoenas that the George Washington University ("the University") served on three of those witnesses—Blake Morton, Amlan Sahoo, and William "Wills" Tutecky—arguing that Plaintiff's communications with the witnesses all qualify as attorney work product.  Plaintiff cannot have it both ways.  While "[d]ocuments prepared in anticipation of litigation by non-attorneys" may qualify as work product if they are "created at the direction of attorneys," *Wadelton v. Dep't of State*, 208 F. Supp. 3d 20, 32 (D.D.C. 2016), Plaintiff was apparently not acting at the direction of his attorney when he was contacting non-party witnesses via text message, *see* Ex. A at 47:2-5.  Nor has Plaintiff otherwise met his burden of showing why all of his post-July 18, 2019 communications with these third-parties—on which no attorneys were copied—qualify as work product.  Plainly, they do not.

Plaintiff's Motion to Quash the University's subpoena should be denied for at least three additional reasons.  *First*, even if the subpoenaed materials did contain work product, Plaintiff has waived protection of the work-product doctrine, both by producing certain select communications to the University, and by sharing the supposed work product with third parties in the first place. *Second*, as set forth in the University's Motion for Case-Terminating Sanctions, *see* Dkt. 46, Plaintiff has bribed, intimidated, and threatened these witnesses. This misconduct satisfies the requirements of the crime-fraud exception to the work-product doctrine, given that the subpoenaed communications bear directly on misconduct by Plaintiff that is inconsistent with "the basic premises of the adversary system."  *In re Sealed Case*, 676 F.2d 793, 811-12 (D.C. Cir. 1982).

*Third*, even if the subpoenaed communications did qualify as work product, the University is still entitled to them because it has a substantial need for the communications and the communications are unavailable through other means.  For all these reasons, and those set forth in further detail below, Plaintiff's Motion to Quash should be denied.

## II.     STANDARD OF REVIEW

The party seeking to benefit from the attorney work-product doctrine bears the burden of establishing both that the doctrine applies and that it has not been waived.  *United States v. Phillip Morris*, 212 F.R.D. 421, 422 (D.D.C. 2002).  The work-product doctrine is designed to protect "the thoughts and opinions of counsel developed in anticipation of litigation."  *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010).  Rule 26(b)(3)(A) codifies the doctrine and extends work-product protection to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  The plain text of the Rule thus extends protection not only to documents prepared by an attorney, but also to documents that are prepared by a "party" or "its representative," "so long as they were clearly prepared in anticipation of litigation."  *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 76 (D.D.C. 2003) (collecting cases).  In the D.C. Circuit, "material is generated in anticipation of litigation if . . . the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation."  *Mischler v. Novagraaf Grp. BV*, No. 1:18-cv-2002, 2019 WL 6135447, at *3 (D.D.C. Nov. 19, 2019) (citation and internal quotation marks omitted) (emphasis in original); *see also Deloitte*, 610 F.3d at 137 (adopting the "because of" test for work-product protection).

"[A]lthough materials prepared by non-attorneys supervised by attorneys are capable of enjoying work-product protection, the degree to which counsel is involved in creating the document[s] bears directly on whether the document was prepared in anticipation of litigation"

and thus, qualifies as work product.  *United States v. ISS Marine Servs.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012).  As another Judge on this Court has explained, the "relationship can be thought of as a sliding scale, whereby a party's burden to demonstrate a document's litigious purpose increases—all other things being equal—as attorney involvement in creating the document decreases."  *Id.* at 134-35.  This rule-of-thumb "recognizes the reality that attorneys are the ones who actually litigate cases, and whether or not a [party] involves attorneys in creating a document is a telling indication about whether the document was prepared in anticipation of litigation."  *Id.* at 135.[1]

"Disclosing work product to anyone 'without common interests in developing legal theories and analyses of documents' serves as a waiver of the protection."  *Phillip Morris*, 212 F.R.D. at 424 (quoting *In re Sealed Case*, 676 F.2d at 817).  And "[c]ommunications otherwise protected by the [work-product] privilege are not protected if the communications are made in furtherance of a crime, fraud, or other misconduct."  *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985).  Finally, even if materials qualify as work product, they still may be discovered if the party seeking them "has substantial need for the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P.  26(b)(3)(A)(ii).

## III.     RELEVANT FACTS AND PROCEDURAL HISTORY

On November 25, 2019, the University filed a Request for Ruling Regarding Production of Communications (Dkt. 51), seeking an order from this Court requiring Plaintiff to produce his

---

[1] The significance of attorney involvement for application of the work product doctrine does not by itself foreclose application of the doctrine to *pro se* parties.  However, the documents at issue here are all dated after Plaintiff retained counsel in this action.  Accordingly, the proper inquiry for this Court in considering the application of *ISS Marine Services* is the extent to which Plaintiff's counsel, having already been retained, was involved in the communications that Plaintiff now seeks to shield from discovery.  As discussed further below, Plaintiff's counsel has disclaimed any involvement whatsoever in the communications.  Plaintiff thus bears a significant burden— which he has not met and cannot meet—to show that the communications were made "in anticipation of litigation."

post-July 18, 2019 communications with four third-party witnesses—Messrs. Tutecky, Sahoo, and Morton, and Darian Hashemzadeh.  Dkt. 51 at ¶¶ 1-2 & n.1.  The University explained in its Request for Ruling that it also intended to issue subpoenas to the third parties themselves requesting the same communications, given spoliation concerns related to Plaintiff.  *Id.* at ¶ 3.

The University subsequently served Rule 45 subpoenas on Messrs. Morton, Sahoo, Tutecky, and Hashemzadeh, seeking the production of three categories of documents relevant to this case.  In particular, each subpoena requested: (1) all communications with Jabari Stafford from January 12, 2018 through the present; (2) all communications between the recipient of the subpoena and Plaintiff, Mr. Tutecky, Mr. Morton, or Mr. Hashemzadeh from January 12, 2018 through the present; and (3) all communications between the recipient of the subpoena and any other person relating to this lawsuit.  The subpoenas were served on November 27 (Mr. Sahoo), December 4 (Mr. Morton), December 5 (Mr. Tutecky), and December 6 (Mr. Hashemzadeh).

By letters dated December 6, 2019, Plaintiff's counsel informed Messrs. Sahoo, Morton, and Tutecky that the University's subpoenas to them were the subject of Plaintiff's pending Motion to Quash, and requested that, while the motion was pending, the witnesses not produce to the University "any communications that [they] have [had] with Jabari from July 18, 2019, if any."  *See* Ex. B.  Plaintiff's counsel did not send a similar letter to Mr. Hashemzadeh, and Plaintiff has not moved to quash the subpoena that was served on Mr. Hashemzadeh.

Notwithstanding the letters from Plaintiff's counsel, on December 9 and December 13, respectively, Mr. Morton and Mr. Sahoo produced documents to the University via email.[2]  Although the documents produced by Mr. Sahoo do not appear to contain any work product, they do further illustrate Plaintiff's attempts to intimidate Mr. Sahoo to support Plaintiff in this case.

---

[2]  On December 9 and again on December 10, Mr. Hashemzadeh represented to the University that he did not have any documents responsive to the subpoena.

According to one of the documents produced by Mr. Sahoo, on a date likely at the end of August 2019, Plaintiff requested that Mr. Sahoo fill out a form with his "name, student id, and signature. This form is going to allow us to access your Title 9 records.  None of your other records will be disclosed," Plaintiff told Mr. Sahoo.  Ex. C.  Mr. Sahoo responded, "I can do that."  *Id.*  After having sent multiple follow-up requests to Mr. Sahoo asking for the signed form, and having not received a response, Plaintiff wrote to Mr. Sahoo:  "I'm trying to get in touch with you dude they found something horrible on you and I think it might come out publicly."  *Id.*

The University believes that the form in question was a release that Plaintiff apparently wanted Mr. Sahoo to sign so that the University could produce sensitive educational records to Plaintiff without having to first redact Mr. Sahoo's name in accordance with the Family Educational Rights and Privacy Act (FERPA).  (Mr. Sahoo ultimately declined to sign the form.) Moreover, to the best of the University's knowledge, nothing "horrible" had been "found" on Mr. Sahoo; instead, it appears that Plaintiff was attempting to coerce Mr. Sahoo into providing the signed FERPA release by threatening him with disclosure of nonexistent "horrible" facts if he did not agree to sign.  As the Court may recall, Plaintiff had earlier threatened Mr. Sahoo—using Mr. Tutecky as a conduit—that if Mr. Sahoo did not cooperate with Plaintiff by providing a statement, embarrassing facts about him would be released to the *Washington Post*.  *See* Ex. D at lines 6585, 6587 (Plaintiff instructing Mr. Tutecky to tell Mr. Sahoo: "Amlan, you will be subpoenaed within the next few days or couple weeks.  Your story is also going to be in the WS along with your name . . . .  You should probably contact Jabari because he's trying to help you and [d]o this the right way."[3]

---

[3]  Plaintiff confirmed in deposition that "WS" was a reference to the *Washington Post*.  Ex. E at 326:3-9.

# IV.    ARGUMENT

## A.    Plaintiff's Text Messages With Third Parties Do Not Satisfy The Elements Of The Attorney Work-Product Doctrine

Plaintiff has failed to meet his burden of establishing that all of his subpoenaed communications with three third-party witnesses constitute attorney work product.[4]

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The doctrine "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal Gas States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980). By extension, the doctrine also protects litigation "materials prepared by agents of the attorney acting at the attorney's request." *United States v. Philip Morris USA, Inc.*, No. Civ. A. 99-2496 (GK), 2004 WL 5355972, at *8 (D.D.C. Feb. 23, 2004).

Here, by his own admission, Plaintiff's attorney did not "request" that Plaintiff engage in written communications with Messrs. Morton, Sahoo, and Tutecky after he was retained to

---

[4]   The University submits this opposition and the arguments herein on the basis of the extremely limited information that Plaintiff has provided regarding the communications in question. Despite multiple requests by the University, Plaintiff has refused to produce a privilege log identifying the documents that he describes as protected work product and articulating the precise nature of his claims of work-product protection over them. Plaintiff's refusal in this regard violates Rule 26(b)(5), which provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged *or subject to protection as trial-preparation material*, the party *must* . . . expressly make the claim; and . . . describe the nature of the documents[ or] communications . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5) (emphasis added); *see also Washington v. Thurgood Marshall Academy*, 232 F.R.D. 6, 10-11 (D.D.C. 2005) (party that claimed work product protection over certain documents was required to produce a privilege log). Without a privilege log, Plaintiff has failed to meet his burden of providing adequate information on which to base his claims of work product. On this basis alone, Plaintiff's claim of work product protection should be rejected. *See id.* Moreover, Plaintiff's stated reason for not producing a privilege log—the supposed "burden" associated with compiling a log—only underscores the substantial need that the University has for the subpoenaed communications, which are apparently voluminous. *See, e.g.*, Ex. A at 48:13-18 (counsel for the University stating that "the idea that there's some burden of assembling a log – how many texts has the plaintiff exchanged with these three gentlemen since Mr. Ross was retained? If it's enough that this is a substantial distraction and burden to him, that's even more concerning to me.").

represent Plaintiff in July 2019.  And Plaintiff makes not even the slightest attempt to explain how and why his communications with these witnesses implicate his attorney's mental processes and opinions, whether directly or indirectly.  That is unsurprising, since, again, Plaintiff's counsel has disclaimed any involvement in the communications.  *See, e.g.*, Ex. A at 47:2-5.

To be sure, Rule 26(b)(3)(A) does not limit work-product protection to materials that are necessarily created by an attorney or at an attorney's express direction; however, the proponent of work-product protection must show that the materials at issue were prepared "in anticipation of litigation or for trial."  Fed. R. Civ. P. 26(b)(3)(A).  In the D.C. Circuit, this requires demonstrating that "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  *Deloitte*, 610 F.3d at 137 (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)); *see also* 8 Charles Wright & Arthur Miller, Fed. Prac. & Proc. § 2024 (3d ed. 2010).  In other words, there must be a "showing that the document[] [was] prepared for the purpose of assisting an attorney in preparing for litigation, and not for some other reason."  *Alexander v. FBI*, 192 F.R.D. 42, 46 (D.D.C. 2000).  And of course, given that "attorneys are the ones who actually litigate cases," whether an attorney is involved in "creating a document is a telling indication about whether the document was prepared in anticipation of litigation."  *ISS Marine Servs.*, 905 F. Supp. 2d at 135.

Here, given the admitted lack of involvement by Plaintiff's counsel "in supervising the preparation of the document[s]" called for by the University's subpoenas—most of which consist of text messages between former college classmates and tennis teammates—Plaintiff's burden to prove that the documents are nonetheless subject to attorney work-product protection "becomes more arduous."  *ISS Marine Servs.*, 905 F. Supp. 2d at 138.   Plaintiff must come forward with

"evidence that persuasively explains how the [documents] could have genuinely been prepared in anticipation of litigation," *id.*, even though his attorney had ***no involvement*** in preparing them or directing their creation.  Plaintiff has not—and cannot—meet this heavy burden.

Instead, Plaintiff meekly asserts that all of the subpoenaed communications somehow "relate to the preparation of" the witnesses' "statements in support of [Plaintiff] and his litigation against Defendant."  Dkt. 53-2 at 2.  Even if that assertion were true, it would not suffice to demonstrate that the communications were undertaken to assist Plaintiff's *counsel* in preparing Plaintiff's case, such that they are protected as attorney work product.  *See, e.g.*, *Alexander*, 192 F.R.D. at 46-47 (party failed to demonstrate application of work-product protection where documents did "not reveal the mental impressions or conclusions of [his] attorneys, or even [of him]").  A "statement[] in support of" a party is distinct from a document that was created to assist a party's attorney in preparing that party's case for trial.  And of course, communications between Plaintiff and third-party witnesses that are about this case or the witnesses' testimony cannot all be protected—such a rule would shield from discovery even improper communications reflecting coordination between witnesses, or commentary on the merits of a case by a witness that is not made for the purpose of preparing for litigation.  That is not the law.  *See, e.g.*, *Cobell v. Norton*, 212 F.R.D. 24, 31 (D.D.C. 2002) ("The work product rule 'has no applicability to documents prepared by lawyers in the ordinary course of business or for other nonlitigation purposes'" (citation and internal quotation marks omitted)).

In any event, even if this Court were to find that some of the communications in question were made in anticipation of litigation, the notion that *all* of the communications qualify as work product is simply not credible.  Only some of the *pre*-July 18, 2019 text messages between Plaintiff and the subpoenaed witnesses dealt with the preparation of those witnesses' statements.  It

therefore strains credulity to believe that *after* his retention of counsel, *all* of Plaintiff's communications with these same third-party witnesses—his former teammates—somehow became focused exclusively on the preparation of their witness statements. Moreover, Plaintiff's assertion that all of the subpoenaed communications dealt with the preparation of witness statements is now demonstrably false, in light of Mr. Sahoo's production of communications in response to the University's subpoena which do *not* relate to the preparation of his witness statement. *See* Ex. C (Plaintiff's implied threat to reveal "horrible" facts regarding Sahoo).

In short, Plaintiff's attempt to confer blanket work-product protection over all of his communications with third-party witnesses must be rejected, given that his attorney did not direct or supervise the communications, and given the absence of evidence that the communications were undertaken "because of" this case—*i.e.*, for the purpose of assisting an attorney in this litigation.

**B.    Plaintiff Has Waived Work-Product Protection By Producing Certain Texts To The University, And By Disclosing Supposed Work Product To Third Parties**

Even if the entirety of Plaintiff's communications with Messrs. Morton, Sahoo, and Tutecky did qualify as attorney work product—and they do not—Plaintiff has waived any work-product protection afforded to the communications, in two different ways.

*First*, Plaintiff waived any work-product protection afforded to the communications by producing certain of the communications to the University in this case. Waiver occurs when documents subject to protection are disclosed to an adversary or in a manner that "substantially increases the likelihood that an adversary will come into possession of the material." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 315 F.R.D. 103, 109-10 (D.D.C. 2016). Here, Plaintiff already has produced to the University communications with Mr. Tutecky that post-date Plaintiff's retention of counsel in this case. *See, e.g.*, Ex. F; Ex. G (emails from Mr. Tutecky to Plaintiff attaching different versions of Mr. Tutecky's witness statement). Consequently, Plaintiff

has waived work-product protection as to *all* of his post-July 18, 2019 communications with Messrs. Tutecky, Morton, and Sahoo. This is a classic sword and shield problem: By producing only those post-July 18, 2019 communications with witnesses that appear to support his case, Plaintiff has attempted to gain a strategic advantage. As a result, application of subject-matter waiver is necessary to correct this abuse of the adversary system, and Plaintiff should be found to have waived protection over any communications between him, on the one hand, and Messrs. Morton, Sahoo, or Tutecky, on the other hand. *See Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 259 (D.D.C. 2004) (finding subject-matter waiver appropriate where party disclosed only work product "that supported the legality and advisability" of an agreement, but withheld "any documents . . . that might suggest otherwise," creating a situation in which the "evidence in the record . . . reflect[ed] only one side or a part of privileged communications").

*Second*, even if the Court declines to find subject-matter waiver appropriate on the basis of Plaintiff's production of his communications with Mr. Tutecky, it still should find waiver proper on the basis of Plaintiff's decision to communicate with third parties in the first place. Plaintiff's communications with three third parties made it substantially more likely that any "work product" Plaintiff shared with them would be transmitted to the University. Where a party lacks any expectation that a third party to whom it discloses otherwise protected work product will keep the information confidential, that supports a finding of waiver. *See In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984). Here, Plaintiff has not asserted that he sought or received any assurances of confidentiality from Messrs. Morton, Sahoo, and Tutecky. Indeed, two of these individuals already have produced at least some of their post-July 18, 2019 communications with Plaintiff to the University. *See*, *e.g.*, Ex. C (Sahoo communications likely dating to late August and early September); Ex. H (Morton communication dated October 24, 2019). Accordingly, by

communicating with third-party witnesses in the first instance who did not make any promise of confidentiality—and indeed, now have revealed the communications to Plaintiff's adversary—Plaintiff waived any assertions of work-product protection that he might have otherwise had over the substance of the communications.[5]

## C.      There Is No Basis For Plaintiff's Invocation Of The Common Interest Exception To The Waiver Doctrine

Plaintiff's attempt to avoid the implications of his waiver through resort to the so-called "common interest" exception also must be rejected, for two reasons.

*First*, the "common interest" exception has no application to the waiver that Plaintiff effectuated by producing select communications to the University, nor does it affect the subject-matter waiver that necessarily results from that production. *See supra* Section IV.B.  In other words, the fact that Plaintiff and the witnesses with whom he communicated shared an alleged "common interest" in "eliminating racial harassment" (Dkt. 53-2 at 3) has no bearing on whether Plaintiff *himself* separately waived any work-product protection attached to the communications by producing certain of them, even after he was represented by capable counsel.

*Second*, in order to show that the common interest exception to the waiver doctrine applies, Plaintiff would need to demonstrate that he, Mr. Sahoo, Mr. Morton, and Mr. Tutecky all "anticipate[d] litigation against a common adversary on the same issue or issues" such that they

---

[5]  If anything, Plaintiff's attempts to bribe and intimidate Messrs. Tutecky, Sahoo, and Morton into providing him with favorable statements, *see generally* Dkt. 46, suggests that Plaintiff did not trust these individuals to support him in this case without additional inducements.  Plaintiff admitted as much at his deposition, at least in regard to Mr. Sahoo, who he feared would "talk[] to the opposition," including the University and its attorneys.  Ex. E at 327:13 – 328:17.  In light of this lack of trust, it defies logic to think that Plaintiff had a reasonable expectation of confidentiality in his communications with Messrs. Tutecky, Sahoo, and Morton.  Plaintiff's attempt to limit his contact with the witnesses to oral communications further reveals his own belief that any written communications would be discoverable.  *See* Ex. I line 6247 (Plaintiff to Morton: "Send me your # we should talk over phone so there's no trail"); Ex. E at 348:16 – 352:7 (Plaintiff's deposition testimony regarding this instruction to Morton, including that Plaintiff "didn't want him to, you know, send [information] over text message.  I wanted it to be in a formal statement if he were to tell me anything.").

have "strong common interests in sharing the fruit of the trial preparation efforts." *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).  No such showing has been made here—nor could it be.  Messrs. Sahoo, Morton, and Tutecky are all well-aware of this litigation, and yet, none has expressed an interest in joining as a party.  Indeed, certain of these witnesses have stated the opposite to counsel for the University—*i.e.*, that they "would like to not get involved in this case."  Ex. J.  Just as in *Schanfield*—a case upon which Plaintiff relies, but which actually held that the common interest exception to the waiver doctrine did *not* apply—the third parties with whom Plaintiff communicated have not shown any interest in being a part of this litigation.  *See Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 216 (S.D.N.Y. 2009) (explaining that "while [the plaintiff] may have speculated that his former colleagues shared his interests in bringing suit against [the defendant], the e-mails . . . simply do not provide facial support for this assumption").  As a result, there is no indication that the subpoenaed third parties have "strong common interests in sharing the fruit of [Plaintiff's] trial preparation efforts," *Am. Tel. and Tel. Co.*, 642 F.2d at 1299, as would be needed for the common interest exception to apply.

**D.     The Subpoenaed Communications Must Be Produced In Accordance With The Crime-Fraud  Exception To The Work-Product Doctrine**

Even if the Court does not find waiver, it still should find that the work-product doctrine does not apply to the subpoenaed communications in light of the crime-fraud exception.

The crime-fraud exception applies where two criteria are met.  *First*, there must be a "prima facie showing of a violation sufficiently serious to defeat the work-product privilege"—that is, "a showing that the client was engaged in planning a criminal or fraudulent scheme when it sought the advice of counsel, or that the client actually committed or attempted a crime or fraud subsequent to receiving the benefit of counsel's work product."  *In re Sealed Case*, 676 F.2d at 814-15.  This requirement is satisfied if there is "evidence that, if believed by a trier of fact, would

establish the elements of some violation that was ongoing or about to be committed when the work product was prepared." *Id.* at 815. *Second*, there must be "some valid relationship between the work product [in question] and the prima facie violation." *Id.* at 814-15. For purposes of this requirement, "[a] finding that the work product reasonably relates to the subject matter of the possible violation should suffice." *Id.* at 815.

Here, and as set forth in greater detail in the University's November 5, 2019 Motion for Case-Terminating Sanctions, prior to July 18, 2019, Plaintiff engaged in a concerted effort to bribe and intimidate Messrs. Tutecky, Sahoo, and Morton into providing him with favorable witness statements that he could use in this litigation. *See* Dkt. 46. This scheme was ongoing when Plaintiff retained counsel in this case in July 2019, and Plaintiff cannot now use the involvement of counsel as a shield to avoid discovery of both his illicit activity and the contents of the documents that the University is seeking through its Rule 45 subpoenas. Moreover, by Plaintiff's own admission, the purported "work product" here—that is, Plaintiff's communications with these three witnesses (or at least some of them)—"relate[s] to the preparation of" these witnesses' statements. It therefore "reasonably relates to the subject matter of" Plaintiff's illicit attempts to bribe and intimidate the witnesses into providing statements—and thus, must be produced.

**E.**   **Even If The Subpoenaed Communications Qualified As Work Product, They Must Be Produced Because The University Has A Substantial Need For Them**

Irrespective of whether the elements of the crime-fraud exception are satisfied, the subpoenaed communications also must be produced because the University has demonstrated a substantial need for the communications and cannot obtain them through other means.

Given Plaintiff's counsel's admitted lack of involvement in the communications at issue, Plaintiff correctly concedes that, if the communications constitute any form of work product, they are merely "fact work product," which this Court has recognized consists of documents prepared

in anticipation of litigation that "reflect[] only relevant, non-privileged facts."  *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425 (D.D.C. 2014) (Cooper, J.).  Fact work product "is discoverable upon a showing of substantial need and unavailability by other means."  *Id.*; *see also* Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).  In *Landis*, this Court held that the defendant had met this standard in seeking the production of law enforcement memoranda containing fact work product, because the memoranda were "unique sources of both affirmative evidence and impeachment material for which there is no substitute."  *Landis*, 303 F.R.D. at 426.

Here, the same is true with respect to Plaintiff's communications with Messrs. Morton, Sahoo, and Tutecky.  To the extent that they reflect or discuss any statements by these witnesses, the communications are necessary for the University to review in defending itself in this action.  Moreover, to the extent that the communications reveal discrepancies between the witnesses' actions in the relevant time-period in this case and their recollections of those interactions, or inconsistencies between their statements, any testimony and the underlying facts, the communications are critical for impeachment purposes.  *See generally Landis*, 303 F.R.D. at 426 (noting that the memoranda this Court ordered produced were "unique" insofar as they may "reveal how the witnesses' testimony and recollections may have changed over time").

This is particularly true given that Plaintiff has apparently obtained the witnesses' statements through intimidation, bribery, and extortion.  For purposes of impeaching these witnesses based on their motive to lie, the University is entitled to communications that reflect both Plaintiff's illicit behavior towards the witnesses (which gives them motive to lie) and the effects of that behavior on the witnesses' statements.  No source of information other than the communications themselves can serve this purpose—particularly not deposition testimony by the

witnesses, given the obvious risk that such testimony will be tainted by Plaintiff's improper conduct.

## V.    CONCLUSION

For the foregoing reasons, the University hereby respectfully requests that Plaintiff's Motion to Quash be denied.  In the alternative, the University respectfully requests that the Court conduct an *in camera* review of all materials responsive to the subpoenas, and that the Court issue an appropriate order based on that *in camera* review and the arguments set forth above.  As set forth in its Request for Ruling, *see* Dkt. 51, the University similarly requests that the Court also order Plaintiff to produce his communications with the witnesses as well.

Dated: December 19, 2019                    Respectfully submitted,

                                            /s/ *Jason C. Schwartz*
                                            Jason C. Schwartz (DC Bar No. 465837)
                                            Molly T. Senger (DC Bar No. 995975)
                                            Michael R. Dziuban (DC Bar No. 1034156)
                                            Matthew P. Sappington (DC Bar No. 1616305)
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1050 Connecticut Avenue, N.W.
                                            Washington, DC  20036
                                            Telephone:  202.955.8500
                                            Facsimile:  202.530.9522
                                            jschwartz@gibsondunn.com
                                            msenger@gibsondunn.com
                                            mdziuban@gibsondunn.com
                                            msappington@gibsondunn.com

                                            *Attorneys for Defendant*