Exhibit 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JABARI STAFFORD, | |
| Plaintiff, | |
| v. | Case No. 1:18-cv-02789-CRC |
| THE GEORGE WASHINGTON UNIVERSITY, et al., | |
| Defendants. | |

**DEFENDANT THE GEORGE WASHINGTON UNIVERSITY'S
OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Federal Rules"), Defendant the George Washington University ("the University"), by its attorneys, hereby submits the following Objections and Responses to Plaintiff's First Set of Interrogatories to the University dated September 2, 2019 (the "Interrogatories"). The University objects and responds to the Interrogatories as follows, and is willing to meet and confer to discuss these responses, should counsel for Plaintiff desire to do so.

**<u>GENERAL OBJECTIONS</u>**

The general objections listed below ("General Objections") apply to and are incorporated by the University into each specific objection and response to the Interrogatories. Each set of specific Objections and Responses to the Interrogatories is made without waiving the University's General Objections.

1)      The University's responses are based on its current knowledge, information, and belief, and upon documents currently in the University's possession, custody, or control as a result of a reasonable search. The University's responses herein represent a diligent and good faith effort

1

to comply with the Interrogatories.  The University's factual and legal investigation of this matter is ongoing.  The University has not completed its investigation of the facts relating to this case, has not completed discovery, and has not completed preparation for trial in this matter.  Further investigation, research, and analysis may reveal the existence of additional documents, facts, or contentions; add meaning to known documents, facts, or contentions; and/or lead to additions, variations, or changes to these Objections and Responses.  Without obligating itself to do so, except as may be required by applicable rules, the University expressly reserves the right to supplement, amend, correct, clarify, or modify these Objections and Responses as additional documents, facts, or contentions are discovered, revealed, recalled, or otherwise ascertained, and as further analysis and research disclose additional documents, facts, or contentions that may apply.

2)      Nothing herein shall be construed as an admission by the University regarding the competence, relevance, materiality, or admissibility of any fact, except where expressly stated, or as an admission of the truth or relevance of any factual assertion, implication, or characterization of any information sought by the Interrogatories.  These Objections and Responses are made without waiver of, or prejudice to, any such objections or rights.

3)      No objection or limitation or lack thereof, in these Objections and Responses shall be deemed an admission by the University as to the existence or non-existence of information.

4)      The University responds to the Interrogatories without waiving or intending to waive, but rather preserving and intending to preserve, its right to object to any other discovery requests.

5)      The specific Objections and Responses set forth below are based on the University's interpretation of the language used in the Interrogatories, and the University reserves

the right to amend or supplement these Objections and Responses in the event that Plaintiff asserts an interpretation different from the University's interpretation.

6)      The University objects to the Interrogatories, including the Definitions and Instructions and each specific Interrogatory therein, to the extent they purport to impose requirements that are inconsistent with, or beyond those contemplated by, the Federal Rules, the Local Rules of the United States District Court for the District of Columbia ("Local Rules"), any other applicable rule or law, or any order entered in or applicable to this action.  The University will construe and respond to the Interrogatories in accordance with the requirements of the Federal Rules of Civil Procedure, the Local Rules, and any other applicable rule or law, and all orders applicable to this action.

7)      The University objects to the Interrogatories, including the Definitions and Instructions and each specific Request therein, to the extent they assume disputed facts or legal conclusions.  By responding and objecting to the Interrogatories, the University neither admits nor denies any such facts or legal conclusions.

8)      The University objects to the Interrogatories, including the Definitions and Instructions and each specific Interrogatory therein, to the extent that they seek information contained in documents the University expects to produce in response to Plaintiff's First Set of Requests for Production to the University, dated September 2, 2019 ("First RFP").  Pursuant to Rule 33(d) of the Federal Rules, the University refers Plaintiff to the information contained in those documents.  Any statement herein that the information sought by an Interrogatory is contained in documents that are expected to be produced to Plaintiff shall not be construed as a representation regarding the existence or non-existence of specific documents in the University's

possession, custody, or control and reflects the intention of the University, subject to its objections, to provide responses to Plaintiff's First RFP.

9)      The University objects to the Interrogatories, including the Definitions and Instructions and each specific Interrogatory therein, to the extent they purport to require the disclosure of information that is subject to any privilege, immunity, or obligation of confidentiality, including, without limitation, the attorney-client privilege, the attorney work-product doctrine, the Family Educational Rights and Privacy Act ("FERPA"), or any other legally recognized privilege, immunity, exemption, or protection against disclosure.  The University's use of "privileged" in any objection or response herein should be understood to include any applicable privilege or protection.  Any inadvertent disclosure of any privileged information to Plaintiff shall not be deemed or construed to constitute a waiver of any privilege, any other doctrine against disclosure, or the University's right to object to the use of any information inadvertently disclosed. The University has not previously waived any applicable privilege and it does not intend to do so through the production of information in response to the Interrogatories.

10)      These Objections and Responses are without prejudice to and not a waiver of (i) the University's right to contend at trial or any other proceeding in this action that any information produced in response to the Interrogatories is inadmissible, irrelevant, immaterial, or not a proper subject of discovery; and (ii) any objection by the University to any future use of such information that Plaintiff may attempt to make.  In addition, these Objections and Responses and any information produced pursuant thereto are solely for the purposes of this action.

The foregoing General Objections apply to each and every specific Interrogatory and are incorporated by reference in each of the Objections and Responses set forth below, including the

objections to the Definitions and Instructions, which are made without waiver of, and subject to, these General Objections.

## <u>OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>

1)      The University objects to the Instructions to the extent they purport to broaden the obligations imposed by the Federal Rules, the Local Rules, any other applicable rules, any applicable Court orders, or any agreements of the parties.

2)      The University objects to the definitions of "document" and "documents" and "contact," "communication," and "communicate" to the extent they redefine terms that are commonly used or deviate from how those terms are defined and used in the Federal Rules, the Local Rules, any other applicable rules, any applicable Court orders, or any agreements of the parties.

3)      The University objects to the definitions of "Defendant," "The University," and "GWU" and "you" and "your" on the grounds that they are vague, ambiguous, overly broad, and unduly burdensome.

4)      The University objects to Instruction Nos. 9–13, 17–20, and 25–26 to the extent they impose undue burdens and requirements beyond those imposed by the Federal Rules.

5)      The University objects to Instruction No. 25 to the extent it purports to impose a requirement of producing a privilege log more detailed than required under the Federal Rules.

## <u>SPECIFIC OBJECTIONS</u>

Each and all of the foregoing General Objections, and Objections to Definitions and Instructions, are expressly incorporated into the following specific Objections and Responses to the Interrogatories.  For particular emphasis, one or more of the General Objections and/or Objections to Definitions and Instructions may be reiterated in a specific Objection and Response.

The absence of any reiteration in a specific Objection and Response is neither intended nor shall be construed as a limitation or waiver of any objection.  The University specifically objects and responds to Plaintiff's Interrogatories as follows:

**<u>INTERROGATORY NO. 1</u>:**

Identify each person who has supplied information to answer these Interrogatories.  For each person, identify the particular Interrogatory answer(s) or portion thereof with which he, she, or they helped.

**<u>RESPONSE TO INTERROGATORY NO. 1</u>:**

The University objects to this Interrogatory to the extent it seeks information protected from disclosure by attorney-client privilege or the attorney work-product doctrine.

Subject to and without waiving the foregoing objection, the University identifies the following persons who supplied information to answer these Interrogatories:

- Elizabeth A. Amundson (Interrogatory 19);
- Nicole Anderson (Interrogatory 12);
- Kiera Bloore (Interrogatories 5, 13, 15);
- Torrie Browning (Interrogatories 6, 8, 9, 13, 15);
- Nicole Early (Interrogatories 6, 8, 9, 10, 13, 15);
- Danya Ellman (Interrogatory 12);
- David Macpherson (Interrogatories 6, 11, 13, 15);
- Brian Markham (Interrogatory 19);
- Rory Muhammad (Interrogatory 5);
- Helen Cannaday Saulny (Interrogatories 6, 13, 15);
- Michael Tapscott (Interrogatories 6, 13); and

- Ellen Woodbridge (Interrogatory 12).

**INTERROGATORY NO. 2:**

Identify each person who has given you or anyone acting on your behalf a statement relating and/or pertaining to any of the claims alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 2:**

The University objects to this Interrogatory on the grounds that the term "statement" is vague, ambiguous, and overly broad. The University further objects that this Interrogatory is unnecessarily cumulative and duplicative of other Interrogatories, including Interrogatory No. 3. The University further objects to this Interrogatory to the extent it seeks information protected from disclosure by attorney-client privilege or the attorney work-product doctrine.

Subject to and without waiving the foregoing objections, the University states that information sought in this Interrogatory may be determined from the documents that the University anticipates producing in response to Plaintiff's Requests for Production, including (but not necessarily limited to) Request for Production Nos. 6 and 17. The University further states that, in addition to the witness statements produced by Plaintiff in response to the University's Requests for Production, it is also in possession of written statements from one current and one former University student, and from Plaintiff's father, Tom Stafford.

**INTERROGATORY NO. 3:**

Identify any person who helped prepare the Answer to the Complaint, or any other document you have filed in this Action, for each such person, identify the particular portion of the Answer or other filing with which he, she, or they helped.

**RESPONSE TO INTERROGATORY NO. 3:**

The University objects to this Interrogatory on the grounds that the terms "helped" and "prepare" are vague, ambiguous, and overly broad. The University further objects to this

Interrogatory to the extent it seeks information protected from disclosure by attorney-client privilege or the attorney work-product doctrine.

Subject to and without waiving the foregoing objections, the University states that no person other than outside and in-house counsel for the University helped prepare the Answer to the Complaint or any other document filed in this Action.  (The identification of counsel is not intended to be and should not be construed as a waiver of any applicable privilege or protection.)

**INTERROGATORY NO. 4:**

Identify and describe all communications between Plaintiff and George Washington University, regarding the incidents alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 4:**

The University objects to this Interrogatory on the grounds that the terms "incidents" and "regarding" are vague, ambiguous, overly broad, and unduly burdensome.  The University further objects to this Interrogatory on the ground that identifying and describing "all communications" is overly broad, unduly burdensome, and disproportionate to the needs of the case.  The University also objects to this Interrogatory on the grounds that it has no timeframe limitation and, consistent with the University's Reponses to Plaintiff's First Set of Requests for Production, will interpret this Interrogatory as limited to the period from August 1, 2014 to January 12, 2018.  The University further objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff. The University also objects that the University's investigation of this matter is ongoing.

Subject to and without waiving the foregoing objections, the University states that information sought in this Interrogatory may be determined from the documents that the University

anticipates producing in response to Plaintiff's Requests for Production, including (but not necessarily limited to) Request for Production Nos. 2, 5, 8, 9, 10, and 12.

**INTERROGATORY NO. 5:**

Identify and describe all protocols the University has in place for addressing harassment of one student by another student or a group of students[.]

**RESPONSE TO INTERROGATORY NO. 5:**

The University objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.

Subject to and without waiving the foregoing objection, the University states that the information sought in this Interrogatory may be determined from the documents that the University anticipates producing in response to Plaintiff's Requests for Production, including (but not necessarily limited to) Request for Production Nos. 1 and 16.  The University further states as follows:

The University takes reports of harassment very seriously, and has robust mechanisms in place for responding to such reports.  Harassment implicates the University's Equal Opportunity, Nondiscrimination, Anti-Harassment and Non-Retaliation Policy (formerly the Policy on  Equal Opportunity); Sexual and Gender Based Harassment and Interpersonal Violence Policy (formerly the Sexual Harassment and Sexual Violence Policy); the Threats and Acts of Violence Policy; and the Code of Student Conduct.  Under those policies, the University has a variety of options for students who feel they are subject to harassment by one or more other students:

1) For incidents of sexual and gender-based harassment, sexual assault, sexual exploitation, intimate partner violence, stalking, complicity, and retaliation, the

University encourages all individuals to report Prohibited Conduct to the Title IX Coordinator, the George Washington University Police Department (GWPD), and/or to the Metropolitan Police Department (MPD).  Students may also make a report by notifying the University's Sexual Assault Response Consultative (SARC) Team or the Office of Victim Services within the Department of Safety and Security.  A student can also report the incidents to their Resident Advisor, University Faculty, or other responsible employees.  Once a student submits information about an alleged policy violation through any of the aforementioned channels, the student has the opportunity to participate in a consultation with a member of the Title IX Office to receive information about the policies at GW; the complainant's reporting options at GW or through local law enforcement; the ability to obtain counseling, health, and mental health assistance; and the University's ability to put in place reasonable interim measures.  Prior to July 1, 2018, if a student wanted to proceed with a formal complaint for sexual harassment by another student, the student would meet with the Office of Student Rights & Responsibilities.  After July 1, 2018, a student wishing to make a report of sexual and gender-based harassment, sexual assault, sexual exploitation, intimate partner violence, stalking, complicity, or retaliation, can meet with a Title IX Investigator, who can initiate the Disciplinary Resolution process.

2) A student can file a complaint via the student grievance procedures, *see* https://studentconduct.gwu.edu/student-grievance-procedures, if the student feels he or she has been discriminated against based on race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation, or gender identity or expression in

any of the policies, procedures, programs, or activities of or by any individual employed by or acting in an official capacity for the University.

3) For all forms of harassment, a student can file a report with the GWPD or the MPD. The GWPD, with more than 100 uniformed personnel, provides a range of services to the GW community, including a Threat Assessment Team comprised of a variety of University offices that address concerns about threatening behavior that could result in violence directed toward the students, faculty, and staff of the George Washington University. The GWPD also operates a "TIPS" line to allow people to anonymously report security and safety-related concerns and to provide the GWPD with "tips" about criminal incidents or other behavior on campus.

4) A student can report a violation of the Student Code of Conduct to the Office of Student Rights & Responsibilities (contact information: studentconduct.gwu.edu, (202) 994-6757, or rights@gwu.edu).

5) Finally, all victims of harassment have access to the University's confidential resources in the Office of Advocacy and Support, and the Colonial Health Center.

**INTERROGATORY NO. 6:**

Identify and describe all information the University ever received about Jabari Stafford being mistreated, harassed and/or discriminated against, including stating the person who provided the information to the University and to whom the information was provided.

**RESPONSE TO INTERROGATORY NO. 6:**

The University objects to this Interrogatory on the grounds that the terms "information," "received," "mistreated," "harassed," and "discriminated against" are vague, ambiguous, overly broad, and unduly burdensome. The University further objects to this Interrogatory on the ground that identifying and describing "all information" the University "ever received" is overly broad,

unduly burdensome, and disproportionate to the needs of the case.  The University also objects that, to the extent that this Interrogatory seeks information about any allegation of an incident or occurrence that is not based on Plaintiff's race and/or is not related to the University's men's tennis team, it seeks information that is irrelevant to the claims and defenses in this action and disproportionate to the needs of the case.  The University further objects to this Interrogatory on the grounds that it has no timeframe limitation and, consistent with the University's Reponses to Plaintiff's First Set of Requests for Production, will interpret this Interrogatory as limited to the period from August 1, 2014 to January 12, 2018.  The University also objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.  The University further objects that the University's investigation of this matter is ongoing.   The University also objects to this Interrogatory insofar as it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, FERPA, or any other legally recognized privilege, immunity, exemption, or protection against disclosure.

Subject to and without waiving the foregoing objections, the University states that information sought in this Interrogatory may be determined from the documents that the University anticipates producing in response to Plaintiff's Requests for Production, including (but not necessarily limited to) Request for Production Nos. 5, 8, 9, and 10.  The University further states as follows:

To the extent any information about Plaintiff being "mistreated" was raised while Plaintiff was a student at the University, it was primarily by Plaintiff's father, and frequently tied to Plaintiff's lack of playing time, which escalated Plaintiff's sophomore year with the arrival of a

new interim head coach.  Plaintiff's father's only complaint to Coach Greg Munoz in the 2014-2015 school year was about another player on the team who had an outburst on the court, and in Plaintiff's father's opinion, had not been disciplined for it like Plaintiff had been (which was not the case).  Also in 2015, Plaintiff and his father spoke with Michael Tapscott, Director, Multicultural Student Services Center, about challenges Plaintiff was facing on the men's tennis team.

After Coach Munoz departed the University in February 2016 and Torrie Browning became the interim head coach of the men's tennis team, Plaintiff's father, unhappy with Plaintiff's playing time, told Associate Athletics Director Nicole Early that Coach Browning was discriminating against Plaintiff because he was "rich and good looking."  In late March 2016, after Plaintiff was removed from the line-up at a tournament in California, Plaintiff's father contacted Ms. Early and said that he had done his research on Coach Browning, and believed a woman should not be coaching a men's tennis team.  Shortly thereafter, Plaintiff stopped attending practice, events, matches, and even skipped the conference championship.

The following semester, on September 7, 2016, Plaintiff was informed by the incoming head coach, David Macpherson, that Plaintiff was no longer on the roster for the men's tennis team.  In response, Plaintiff's father left a voicemail for Nicole Early, in which he expressed outrage at what Coach Macpherson had told Plaintiff and threatened a class action lawsuit.  In that voicemail, Mr. Stafford said he had told Ms. Early the year prior that the University "was going to try and deny [his] son an opportunity to play on the tennis team," but admitted that in those conversations, he "didn't allege or didn't talk about all of the racism that existed."  The next day, September 8, 2016, Plaintiff's father left a voicemail for Keely Walston, Special Assistant to the Vice Provost for Diversity, Equity and Community Engagement, alleging that Plaintiff had been

dealing with racism on the men's tennis team, and threatening a class action lawsuit. Plaintiff's father left a similar voicemail for Mr. Tapscott on September 12, 2016. In that message, Plaintiff's father said only that the "whole situation" he had talked to Mr. Tapscott about "over the last two years" had really "morphed into something," and asked for help getting a meeting with Senior Associate Athletic Director Ed Scott.

On September 28, 2016, after Mr. Scott informed Plaintiff that he would be offered an opportunity to try out for the men's tennis team, Plaintiff's father left a voicemail for Mr. Scott, saying he really needed to have a call with Mr. Scott "about issues related to the tennis team and concern for African American players." On October 18, 2016, Plaintiff and his father met with Mr. Scott and Associate Provost for Diversity, Equity and Community Engagement, Helen Cannaday Saulny. During that meeting, Plaintiff's father raised concerns about Plaintiff's treatment as a student-athlete and other issues related to the men's tennis program. Plaintiff and his father were informed of the University's Student Grievance Procedures, and Plaintiff was encouraged to file a formal complaint if he felt that he was being discriminated against.

In April 2017, Plaintiff's father confronted Coach Macpherson at the A-10 Conference Championships about why Plaintiff was not in the line-up. Plaintiff's father later shared his life story with Coach Macpherson, including his general view that Plaintiff had been disadvantaged in life by his race.

**INTERROGATORY NO. 7:**

Identify all actions taken by the University in response to the meeting between Plaintiff, Plaintiff's father, Munoz and Early as mentioned in Paragraph 42 if GWU's Answer, including describing which GWU official(s) took each action.

**RESPONSE TO INTERROGATORY NO. 7:**

The University objects to this Interrogatory on the grounds that the terms "actions" and "in response to" are vague, ambiguous, overly broad, and unduly burdensome.  The University further objects to the extent this Interrogatory assumes certain actions taken were directly responsive to the meeting.  The University further objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.  The University also objects that the University's investigation of this matter is ongoing.

Subject to and without waiving the foregoing objections, the University states as follows: In the meeting between Plaintiff, Plaintiff's father, Coach Munoz, and Ms. Early, Coach Munoz explained the non-discriminatory reasons for Plaintiff's suspension from the team, including his tardiness to practice, anger control issues, and apparent lack of pride in the University.  Following the meeting, Plaintiff remained temporarily suspended from the team for approximately two weeks.  On February 1, 2015, Plaintiff sent Coach Munoz an email apologizing for his past behavior and explaining that his time away from the team had allowed him to think about "how detrimental it is to the organization as a whole."  Plaintiff said he had taken "proactive measures in assuring that [he would] return to the team . . . a fully positive and unselfish teammate."  Shortly thereafter, Plaintiff was reinstated on the team.

**INTERROGATORY NO. 8:**

Identify all actions taken by the University in response to the e-mail Plaintiff sent to Early as stated in Paragraph 87 of GWU's Answer, including describing which GWU official(s) took each action.

**RESPONSE TO INTERROGATORY NO. 8:**

The University objects to this Interrogatory on the grounds that the terms "actions" and "in response to" are vague, ambiguous, overly broad, and unduly burdensome.  The University further objects to the extent this Interrogatory assumes certain actions taken were directly responsive to the email.  The University further objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.  The University also objects that the University's investigation of this matter is ongoing.

Subject to and without waiving the foregoing objections, the University states that in response to Plaintiff's March 22, 2016 email to Ms. Early seeking a meeting with her, Ms. Early agreed to meet with Plaintiff.  Plaintiff also had a meeting with Ms. Early and Coach Browning to discuss some of the reasons that Plaintiff was not getting a lot of playing time, which all focused on Plaintiff's performance, skill, and unwillingness to be a team player.

**INTERROGATORY NO. 9:**

Identify all actions taken by the University in response to the meeting between Plaintiff, Browning and Early mentioned in Paragraph 88 of GWU's Answer, including describing which GWU official(s) took each action.

**RESPONSE TO INTERROGATORY NO. 9:**

The University objects to this Interrogatory on the grounds that the terms "actions" and "in response to" are vague, ambiguous, overly broad, and unduly burdensome.  The University further objects to the extent this Interrogatory assumes certain actions taken were directly responsive to the meeting.  The University further objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of

deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.  The University also objects that the University's investigation of this matter is ongoing.

Subject to and without waiving the foregoing objections, the University states as follows:

On or around March 24, 2016, Ms. Early and Coach Browning held a meeting with Plaintiff, at which they discussed the reasons Plaintiff had not been in the line-up at the tournament in California.  Coach Browning's feedback was focused on Plaintiff's skill as a tennis player and the fact that he was not a team player.  Plaintiff was told that when his teammates were on the court, and he was not playing, he needed to cheer.  He was also asked to stop with aggressive behavior and taunting of his teammates and opponents.  Coach Browning tried to give Plaintiff pointers to improve his performance.

**INTERROGATORY NO. 10:**

Identify all actions taken by the University in response to the meeting between Plaintiff, Plaintiff's father, Saulny, and Scott mentioned in Paragraph 96 of GWU's Answer, including describing which GWU official(s) took each action.

**RESPONSE TO INTERROGATORY NO. 10:**

The University objects to this Interrogatory on the grounds that the terms "actions" and "in response to" are vague, ambiguous, overly broad, and unduly burdensome.  The University objects to the extent this Interrogatory assumes certain actions taken were directly responsive to the meeting.  The University further objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.  The University also objects that the University's investigation of this matter is ongoing.

Subject to and without waiving the foregoing objections, the University states as follows:

On October 18, 2016, Plaintiff and his father met with Mr. Scott and Ms. Cannaday Saulny. During the meeting, Plaintiff's father raised concerns about Plaintiff's treatment as a student-athlete. As Plaintiff had previously been informed by Mr. Scott via email on September 26, 2016, the Stafford family was again informed of the University's Student Grievance Procedures and Plaintiff was encouraged to file a formal complaint if he felt he had been discriminated against on the basis of race. Plaintiff and his father were advised that the University is committed to maintaining a diverse and inclusive environment and that the University takes seriously all complaints of discrimination.

Following the October 18, 2016 meeting, Plaintiff was provided an opportunity to perform a skill assessment with Coach Macpherson in order to gauge Plaintiff's tennis ability. Plaintiff had originally selected October 11, 2016 as the date on which he wanted the skill assessment to take place. On October 10, 2016 Mr. Scott received an email from Plaintiff seeking to reschedule the skill assessment with Coach MacPherson. The skill assessment eventually took place on December 17, 2016 and Plaintiff was reinstated on the team on December 19, 2016.

Also following the meeting, and after the decision had been made to reinstate Plaintiff on the men's tennis team, Ms. Early had a conversation with Coach Macpherson about the need to communicate with the other players on the team and set their expectations for Plaintiff's return, stressing to them that Plaintiff should be welcomed back on the team and should feel supported. Coach Macpherson communicated that message to the team.

**INTERROGATORY NO. 11:**

Identify all actions taken by the University in response to complaints made by Plaintiff to Macpherson as stated in Paragraph 106 of the Complaint, including describing which GWU official(s) took each action. If you deny that Plaintiff made the complaints stated in Paragraph

106, state each and every basis for denying that Plaintiff made the complaints and state everything

Plaintiff told Macpherson during the phone call mentioned in Paragraph 106.

**RESPONSE TO INTERROGATORY NO. 11:**

The University objects to this Interrogatory as compound.  The University further objects

to the extent this Interrogatory assumes certain actions taken were directly responsive to the alleged

phone call.  The University also objects to this Interrogatory to the extent it seeks information that

is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving

or ascertaining the information from these documents is substantially the same for the University

as it is for Plaintiff.  The University further objects to this Interrogatory to the extent it asks the

University to prove a negative by asking for "each and every basis for denying that Plaintiff made

the complaints."  The University further objects that the University's investigation of this matter

is ongoing.  The University also objects to this Interrogatory insofar as it seeks information

protected from disclosure by the attorney-client privilege, the attorney work-product doctrine,

FERPA, or any other legally recognized privilege, immunity, exemption, or protection against

disclosure.

Subject to and without waiving the foregoing objections, the University states as follows:

The incident described in Paragraph 106 occurred while Coach Macpherson was out of

town.  Assistant Coach Rafael Aita would inform Coach Macpherson of Plaintiff's outbursts when

Coach Macpherson had to miss practice for whatever reason.  It was usually because, as in this

instance, Plaintiff was being confrontational toward his teammates and antagonizing them.  After

a particularly explosive episode on March 9, 2017, Coach Macpherson called Plaintiff to talk about

the incident after hearing about it from Coach Aita.  Plaintiff did not bring up racial discrimination

to Coach Macpherson on that call, nor did Plaintiff ever raise an issue of racial discrimination to Coach Macpherson.

In an email from Coach Macpherson to Plaintiff after the call, Coach Macpherson told Plaintiff that he "appreciate[d] his honesty and integrity [earlier that night] . . . in [their] conversation."  Coach Macpherson informed Plaintiff that he regrettably had decided, based on the incident, it was "appropriate for [him] to give [Plaintiff] a one practice session suspension" for the next day.  Coach Macpherson explained that he "realize[s] nobody is perfect and there is always two sides to every story[,]" but stated that "we have to hold our players accountable for their behavior and clearly your emotions got the better of you tonight."  Coach Macpherson said he would inform "Coach Rafa" of his decision and would "instruct him to hold all the other players equally accountable going forward."

**INTERROGATORY NO. 12:**

Identify all actions taken by the University in response to Plaintiff telling the academic advisor about incidents of mistreatment that he endured, including describing which GWU official(s) took each action.  If you deny that Plaintiff told the academic advisor about incidents of mistreatment, state each and every basis for denying that Plaintiff told the academic advisor about incidents of mistreatment and state everything Plaintiff told the academic advisor during the meeting mentioned in Paragraph 114 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 12:**

The University objects to this Interrogatory as compound.  The University further objects to this Interrogatory on the grounds that "incidents of mistreatment that he endured" is vague, ambiguous, overly broad, and unduly burdensome.  The University also objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these

documents is substantially the same for the University as it is for Plaintiff.  The University further objects to this Interrogatory to the extent it asks the University to prove a negative by asking for "each and every basis for denying that Plaintiff told the academic advisor about incidents of mistreatment."  The University further objects that the University's investigation of this matter is ongoing.  The University also objects to this Interrogatory insofar as it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, FERPA, or any other legally recognized privilege, immunity, exemption, or protection against disclosure.

Subject to and without waiving the foregoing objections, the University states as follows: Based on the University's investigation to date, a meeting between Plaintiff, his mother, and one or more academic advisors likely occurred after Plaintiff received notice of his academic suspension and before he submitted his appeal of that suspension.  Plaintiff did not tell any academic advisor that he suffered from racial discrimination or harassment.  If he had, none of the one or more academic advisors at the meeting would have advised Plaintiff to exclude information about any potential cause of Plaintiff's academic struggles.  On the contrary, the one or more academic advisors would have explicitly advised Plaintiff to include in his appeal letter an explanation of why he thought he was struggling academically—whatever the cause—including specific examples and any extenuating circumstances.

**INTERROGATORY NO. 13:**

Identify all actions taken by the University with regard to each and every allegation of mistreatment involving Jabari Stafford, including describing each allegation, who made the allegation and which GWU official(s) took action in response to the allegation.  This request includes, but is not limited to, all actions referred to in Paragraphs 1-6 of Section A of Defendant's Initial Disclosures and Paragraph 8 of Section B of Defendant's Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 13:**

The University objects that this Interrogatory is unnecessarily cumulative and duplicative of other Interrogatories, including Interrogatory Nos. 6, 10, and 15. The University further objects to this Interrogatory on the grounds that the terms "actions," "with regard to," "allegation," and "mistreatment" are vague, ambiguous, overly broad, and unduly burdensome. The University also objects to the extent this Interrogatory assumes certain actions taken by the University were directly responsive to allegations of "mistreatment." The University further objects that identifying and describing "all actions" concerning "each and every allegation of mistreatment involving Jabari Stafford" is overly broad, unduly burdensome, and disproportionate to the needs of the case. The University further objects to this Interrogatory to the extent it seeks information that is contained in documents that are expected to be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff. The University also objects that The University's investigation of this matter is ongoing. The University further objects to this Interrogatory insofar as it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, FERPA, or any other legally recognized privilege, immunity, exemption, or protection against disclosure.

Subject to and without waiving the foregoing objections, the University states as follows:

In or around 2015, in response to Plaintiff and his father telling Mr. Tapscott about the challenges Plaintiff was facing on the men's tennis team, Mr. Tapscott advised Plaintiff to tell his coaches about the problems he was having on the team if Plaintiff felt that escalating the issues was warranted and, if no action was taken by the coaches, to escalate his concerns to higher ranking officials in the Athletic Department.

Following Plaintiff's temporary suspension from the men's tennis team in January 2015, Plaintiff's father confronted Coach Munoz after another player had an outburst at a match, asking why the other player had not been disciplined for his actions when Plaintiff had been. Coach Munoz had in fact disciplined the other player, and was under no obligation to share that information with Plaintiff's father.

In March 2016, after Plaintiff's father told Ms. Early that Coach Browning was discriminating against Plaintiff by not giving him more playing time because he was "rich and good looking," Ms. Early spoke with Coach Browning about Plaintiff's father's concerns. Coach Browning explained to Ms. Early the reasons that Plaintiff was not in the starting line-up, including the fact that he was not at the same skill level as many of his teammates, he got very angry on the court, he was not disciplined, and he was not a team player. Ms. Early found the reasons provided to be legitimate and was satisfied that Coach Browning's conduct was appropriate. Later in March 2016, after Plaintiff was removed from the line-up at a tournament in California, Plaintiff's father again contacted Ms. Early and complained to her that a woman should not be coaching a men's tennis team, explaining that he had "done his research" on Coach Browning. In response to both Plaintiff and his father's complaints about Plaintiff's lack of playing time at the tournament, Ms. Early and Coach Browning met with Plaintiff on or around March 24, 2016, at which time Coach Browning informed Plaintiff of the reasons he had not been in the lineup at the tournament in California. Coach Browning's feedback was focused on Plaintiff's skill as a tennis player and the fact that he was not a team player.

As outlined in response to Interrogatory No. 6, in September 2016, after Plaintiff was informed by Coach Macpherson that he was no longer on the men's tennis team, Plaintiff's father left voicemails for several University employees including Ms. Early, Ms. Walston, Mr. Scott, and

Mr. Tapscott, threatening a lawsuit and alleging that Plaintiff had been dealing with racism on the men's tennis team.  When Ms. Early received Plaintiff's father's voicemail, she immediately contacted the University's Office of General Counsel (OGC) and elevated the matter to the attention of Mr. Scott, who was in charge of all discipline and diversity and inclusion matters within the Athletics Department, and Ms. Cannaday Saulny, the Associate Provost for Diversity, Equity and Community Engagement.  (The identification of counsel is not intended to be and should not be construed as a waiver of any applicable privilege or protection.)

On September 26, 2016, Mr. Scott sent an email to Plaintiff informing him that he would be offered an opportunity to try out for the men's tennis team, acknowledging Plaintiff's father's concerns about Plaintiff's experience on the team, and encouraging Plaintiff to file a formal complaint if he felt he had been discriminated against based on race.  In a reply email from Plaintiff the same day, Plaintiff thanked Mr. Scott for the opportunity to try out for the team and did not say anything about the allegations of racism.  On September 29, 2016, Plaintiff's father left a voicemail for Mr. Scott, saying he really needed to have a call with Mr. Scott "about issues related to the tennis team and concern for African American players."

On October 18, 2016, Plaintiff and his father met with Mr. Scott and Ms. Cannaday Saulny. Plaintiff and his father were again informed of the University's Student Grievance Procedures and Plaintiff was encouraged to file a formal complaint if he felt he had been discriminated against on the basis of race.  Plaintiff never did so.

After Plaintiff was reinstated on the men's tennis team, Ms. Early had a conversation with Coach Macpherson about the need to communicate with the other players on the team and set their expectations for Plaintiff's return, stressing to them that Plaintiff should be welcomed back on the team and should feel supported.  Coach Macpherson communicated this message to the team.

In April 2017, Plaintiff's father confronted Coach Macpherson at the A-10 Conference Championships about why Plaintiff was not in the line-up.  Plaintiff's father later shared his life story with Coach Macpherson, including his view that Plaintiff had been disadvantaged in life by his race.  Coach Macpherson listened to Plaintiff's father; there was no other action requested or taken after the discussion.

Over three months after Plaintiff was academically suspended from the University, on April 18, 2018, Plaintiff's father sent an email to Coach Macpherson with the subject "Major lawsuit being filed," saying "[t]he racist bullshit has not stopped with the the two major players Chris Reynolds and his buddy Dennis.we will see who the niggers are going forward. OUR TURN."  The same day, Plaintiff's father also left a voicemail for Alexander C. Pullen, Human Resources Manager in the GW Athletics & Recreation Department, saying he was preparing a lawsuit for "overt racism."  The next day, April 19, 2018, Plaintiff's father sent an email to Ms. Early explaining that he felt a "a very strong need to express [his] frustrations relative to [Ms. Early], the athletic department, the administration and George Washington University in general" relative to issues of bullying, racism, and physical abuse that he claimed had taken place over the last three and a half years.

Around this same time, in Spring 2018, two other players on the men's tennis team made reports of sexual harassment, sexual assault, bullying, and discrimination to the University's Title IX Office.  The Title IX Office met with both players separately and informed them of their ability to file a complaint with the Title IX Office and explained what that complaint process would entail. Both players indicated that they wanted to think about their options and were not ready to file a formal complaint at that time.  Despite not having a formal complaint, the University launched a general Title IX investigation into the GW men's tennis team, comprising over 29 witness

interviews and extensive document review.  During the course of the investigation, one of the two complainants, ███████████████ provided the University with a written statement that mentions racist mistreatment of Plaintiff.

The University implemented a number of corrective actions to improve the environment on the GW men's tennis team and the management of the team in order to ensure everyone felt safe and comfortable.  The actions taken included:

1)  Meeting with the complainants to explain the investigation findings and inform them that they still had the right to file a formal complaint if they chose to do so.

2)  Directing a player accused of using lewd and discriminatory language to stop that behavior, and explaining to him that continued misconduct could lead to charges under the Student Code of Conduct or the Sexual and Gender-Based Harassment & Interpersonal Violence Policy.

3)  Providing training to all the players on the fall 2018 men's tennis roster on a variety of issues such as diversity, discrimination, harassment, retaliation, reporting options on and off campus, and the resources on campus.

4)  Providing specific training to the new team captain on leadership, bystander intervention, and how to respond to and escalate complaints.

5)  Creating a men's tennis team handbook that outlines expectations on and off the court and provides information on how to report concerns.

6)  Meeting with the men's tennis team at the beginning of fall 2018 semester to wrap up the investigation and clearly communicate the University's expectations.

7) Reminding the coaches to follow best practices with respect to determining the line-up moving forward (despite no evidence that such practices were not being followed previously).

8) Monitoring activity on the men's tennis team by the Athletics Department and the Title IX Office to ensure there was no retaliation or stifling of complaints.

**INTERROGATORY NO. 14:**

Describe each and every "preventive or corrective opportunity" provided by GWU that Plaintiff failed to take advantage of as stated in Paragraph 5 of the "Affirmative and Other Defenses" section of GWU's Answer.

**RESPONSE TO INTERROGATORY NO. 14:**

The University objects that this Interrogatory is unnecessarily cumulative and duplicative of other Interrogatories, including Interrogatory No. 5.

Subject to and without waiving the foregoing objections, the University states that Plaintiff never alleged racial harassment.  The University further states that, on multiple occasions and based on things said by Plaintiff's father, Plaintiff was encouraged to file a formal complaint through the University's student grievance procedures if he felt he was being discriminated against on the basis of race.  Plaintiff never did so.  In terms of additional preventive or corrective opportunities available to Plaintiff, the University restates and incorporates herein its response to Interrogatory No. 5.

**INTERROGATORY NO. 15:**

In Paragraph 9 of the "Affirmative and Other Defenses" section of GWU's Answer, GWU claims it reasonably responded to any allegation of a racially hostile environment.  Identify all actions taken by the University to respond to each allegation of a racially hostile environment,

including describing each allegation, who made the allegation and which GWU official(s) took action in response to the allegation.

**RESPONSE TO INTERROGATORY NO. 15:**

The University objects that this Interrogatory is unnecessarily cumulative and duplicative of other Interrogatories, including Interrogatory Nos. 6 and 13.  The University also objects that this Interrogatory impermissibly shifts the burden to the University to demonstrate that the University was made aware of an assertion that a racially hostile environment existed.  The University further objects that the University's investigation of this matter is ongoing.  The University also objects to this Interrogatory insofar as it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, FERPA, or any other legally recognized privilege, immunity, exemption, or protection against disclosure.

Subject to and without waiving the foregoing objections, the University restates and incorporates herein its response to Interrogatory No. 13.

**INTERROGATORY NO. 16:**

On September 17, 2016, GWU Provost Maltzman issued a statement asserting that GWU valued inclusion and diversity and that "[a] broader review of the Department of Athletics and Recreation is currently underway and will be completed in the near future." (See Maltzman Statement at https://mediarelations.gwu.edu/message-george-washington-University-provost-forrest-maltzman-regarding-basketball.)  Describe all aspects of this "review" including, but not limited to, the basis for the review, all individuals and programs that were reviewed, the findings of the review, suggestions made as the result of the review and every action taken by GWU as the result of the investigation.

**RESPONSE TO INTERROGATORY NO. 16:**

The University objects to this Interrogatory as compound.  The University further objects to this Interrogatory on the grounds that the terms "basis," "programs," "findings," "suggestions," "result," and "action" are vague, ambiguous, overly broad, and unduly burdensome.  The University also objects that, to the extent that this Interrogatory seeks information that does not concern the University's men's tennis team or Plaintiff, it seeks information that is irrelevant to the claims and defenses in this action and disproportionate to the needs of the case.  The University also objects to this Interrogatory insofar as it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, FERPA, or any other legally recognized privilege, immunity, exemption, or protection against disclosure.

The University maintains that this Interrogatory seeks irrelevant information.  Nevertheless, subject to and without waiving the foregoing objections, the University states that a legally privileged and confidential review was conducted by an outside law firm.  (The identification of counsel is not intended to be and should not be construed as a waiver of any applicable privilege or protection.)

**INTERROGATORY NO. 17:**

Identify each and every allegation of harassment and/or hostile environment made by a student against another student, GWU and/or a GWU employee from August 1, 2009 through July 31, 2017.  This includes, but is not limited to, claims of discrimination based on race, claims of mistreatment based on race and claims of abuse based on race.

**RESPONSE TO INTERROGATORY NO. 17:**

The University objects to this Interrogatory on the grounds that the terms "allegation," "harassment," "made," "discrimination," "mistreatment," and "abuse"  are vague, ambiguous, overly broad, and unduly burdensome.  The University further objects that this Interrogatory seeks

irrelevant information, is overly broad, is unduly burdensome, and is disproportionate to the needs of the case.  On its face, this Interrogatory seeks information about every statement by any student to any other person at any time over an eight-year period regarding any form of harassment in any forum under any conditions, whether on the basis of, among innumerable other reasons, race, gender, religion, sexual orientation, political opinion, or any non-protected basis.  The University also objects to this Interrogatory to the extent it seeks information that is contained in documents that might be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.  The University further objects that the University's investigation of this matter is ongoing.  The University also objects to this Interrogatory insofar as it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, FERPA, or any other legally recognized privilege, immunity, exemption, or protection against disclosure.

At this time, the University does not intend to produce any information in response to this Interrogatory in light of the foregoing objections.  The University is willing to meet and confer regarding this Interrogatory.

**INTERROGATORY NO. 18:**

For each allegation listed in response to Interrogatory 17, provide the race, gender and school year of the student making the allegation; each action GWU took in response to the allegation; and the final resolution of the allegation.

**RESPONSE TO INTERROGATORY NO. 18:**

The University objects that the terms "allegation," "making," "action," "took in response," and "final resolution" are vague, ambiguous, overly broad, and unduly burdensome.  The University further objects that this Interrogatory seeks irrelevant information, is overly broad, is unduly burdensome, and is disproportionate to the needs of the case.  On its face, this Interrogatory

seeks information about every statement by any student to any other person at any time over an eight-year period regarding any form of harassment in any forum under any conditions, whether on the basis of, among innumerable other reasons, race, gender, religion, sexual orientation, political opinion, or any non-protected basis.  The University also objects to this Interrogatory to the extent it seeks information that is contained in documents that might be produced to Plaintiff, and the burden of deriving or ascertaining the information from these documents is substantially the same for the University as it is for Plaintiff.  The University further objects that the University's investigation of this matter is ongoing.  The University also objects to this Interrogatory insofar as it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, FERPA, or any other legally recognized privilege, immunity, exemption, or protection against disclosure.

At this time, the University does not intend to produce any information in response to this Interrogatory in light of the foregoing objections.  The University is willing to meet and confer regarding this Interrogatory.

**INTERROGATORY NO. 19:**

State why Plaintiff no longer has access to his GWU e-mail account, including describing when such access was terminated and who made the decision to terminate such access.  If the lack of access is related to a GWU policy, identify the policy and provide a copy of that policy.

**RESPONSE TO INTERROGATORY NO. 19:**

The University objects to this Interrogatory as compound.  Subject to and without waiving the foregoing objection, the University states that a gwu.edu email account is only accessible for students so long as they remain in good standing or they become an alumni–neither of which applies to Plaintiff.  For students who are suspended from the University, standard practice dictates that their access to University email remains active for three terms following their last term of

enrollment.  On May 20, 2019, the University sent Plaintiff an email informing him that his account would be disabled within 30 days.  On June 19, 2019, Plaintiff's University email account was disabled.

Dated: October 16, 2019

Respectfully submitted,

/s/ *Jason C. Schwartz*

Jason C. Schwartz (DC Bar No. 465837)
Matthew P. Sappington (DC Bar No. 1616305)
Crystal L. Weeks (DC Bar No. 1617317)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.530.9522
jschwartz@gibsondunn.com
msappington@gibsondunn.com
cweeks@gibsondunn.com

*Attorneys for Defendant the George Washington University*

## VERIFICATION

I verify under penalty of perjury that the foregoing responses to Interrogatories are true and correct to the best of my knowledge, information, and belief as of this 16th day of October, 2019.

/s/ *Nicole Early*
Nicole Early

## CERTIFICATE OF SERVICE

I, Jason C. Schwartz, an attorney for Defendant the George Washington University, hereby certify that on this 16th day of October, 2019, a copy of the foregoing document was served via email on the following:

Riley H. Ross III
MINCEY FITZPATRICK ROSS, LLC
1500 JFK Blvd., Suite 1525
Philadelphia, PA  19102
Telephone:  215.587.0006
Facsimile:  215.587.0628
riley@minceyfitzross.com

*Attorney for Plaintiff Jabari Stafford*

/s/ *Jason C. Schwartz*
Jason C. Schwartz

*Attorney for Defendant*